## Case No. 838.

BANG v. FARMVILLE INS. & BANKING CO.

[1 Hughes, 290.] [1]

Circuit Court, E. D. Virginia. May, 1876.

FIRE INSURANCE—PAYMENT OF PREMIUM.

Although a policy of insurance provides in terms that the insurance company shall not be liable until the premium shall be actually paid, and that no such provision shall be construed as waived, except by some act as distinct as a clear, express agreement indorsed on the policy, *held*, that where insurance brokers, on delivery to them of a policy, were charged, in general account, with their knowledge, with the pre-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

mium due on the policy, and they made no objection, the company was liable for the insurance money.

[See Frankle v. Pennsylvania Fire Ins. Co., Case No. 5,052a.]

[At law. Action on a policy of fire insurance by Frederick J. Bang against the Farmville Insurance & Banking Company. Judgment for plaintiff.]

The facts of the case are sufficiently stated by the CHIEF JUSTICE.

WAITE, Chief Justice. Woodward & Sherwood were the agents of the defendant at Jersey City, with authority "to take fire risks,, fix rates of premium, receive moneys, countersign, issue, renew, and grant leave to transfer policies of insurance signed by the president and secretary of the company, and to transact the business of insurance in accordance with the rules and regulations of the company, and such instructions as might from time to time be given them by the officers thereof."

The plaintiff employed a firm of insurance brokers in New York to place a large amount of insurance for him upon his "frame building, known as Congress Hall, . . . in the village of Sharon Spa, N. Y." These brokers placed one thousand dollars with the defendant, and received from Woodward & Sherwood, as its agents, a policy for that amount, dated June 2d, 1875. The policy did not acknowledge the receipt of the premium, and contained conditions as follows: "This company shall not be liable by virtue of this policy, or any renewal thereof, until the premium thereof shall be actually paid." "The use of general terms, or anything less than a distinct, specific agreement, clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed or written condition or restriction therein." "The insurance may also be terminated at any time, at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy."

When the policy was delivered to the brokers, they were charged on the books of Woodward & Sherwood with the amount of the premium, less their commission of fifteen per cent. as brokers, and they credited that firm with the same amount on their own books. Woodward & Sherwood also at the same time credited the company with the premium. Soon after receiving the policy the brokers delivered it to Bang, charging him on their books with the premium. It is the custom of insurance agents to transact their business with brokers in good credit in this way. This practice had prevailed between Woodward & Sherwood and this firm of brokers for more than a year previous to this transaction. Statements were rendered the brokers monthly, showing each premium unpaid. As payments were from time to time made, they were so entered on

the books as to show the particular premium they were intended to meet.

Monthly statements were also made by Woodward & Sherwood to the company, showing the risks taken and the premiums collected, as well as those uncollected. Remittances were made in such manner as to indicate the particular premiums paid. The agents were charged on the books of the company with the premiums upon all risks taken. Whenever a policy was cancelled for non-payment of premium, as was sometimes done, the charge against the agents for the premium on that policy was balanced by a corresponding credit. The company had ample means of ascertaining from month to month what premiums were paid upon the outstanding risks and what were unpaid. It also appears from the testimony of the president of the company that the general course of business between the agents and the brokers, as well as their customers, was understood at the home office, and no objection was ever made. In August, Bang paid his brokers on account $450, and this amount was placed to his credit without applying it to the discharge of any particular premium. This was sufficient to pay in full all premiums on all the policies obtained up to and including that of the defendant, but left a considerable sum due on the general account, which included premiums upon a large number of policies obtained after that had been issued. The premium on the defendant's policy was never paid by the brokers to Woodward & Sherwood, and they reported it to the company in all their monthly reports as unpaid and the risk uncancelled. Several times during the summer Woodward & Sherwood called the attention of the brokers to the fact that there had been unusual delay in the payment, and intimated that, unless it was soon provided for, they would be compelled to give notice of a cancellation of the policy on that account. The brokers recognized the fact of the delay, and promised to give it attention at once, but no steps were taken to cancel the policy, neither was the charge for the premium marked off in any of the accounts.

Things remained in this condition until September 1st, 1875, when the property insured was destroyed by fire. Within a few days after, the brokers tendered the premium to Woodward & Sherwood, but they, under instructions from the company, refused to accept it. The share of the loss payable by the defendant, and which is not disputed, if any liability exists, is $763.13. Some questions were raised upon the trial as to notice and proofs of loss, but the testimony shows clearly that prompt notice was given immediately after the fire, and that as soon as the adjustment was completed proofs were furnished showing the amount of the entire loss, the amount of the whole insurance, and the percentage to be paid upon each policy. Copies of the written portions of the several policies other than that of the defendant were not given, but no objection was made at the time on that account, the company rejecting the claim on the sole ground that the premium had not been paid. It is now too late to make this objection. Blake v. Exchange Mut. Ins. Co., 12 Gray, 265. It was also objected at the trial that there was such overvaluation of the property for the purposes of insurance as rendered the policy void. The proof fails to sustain this defence.

The only other question presented by the pleadings or upon the trial is as to the effect of the non-payment of the premium upon the liability of the defendant. There is no doubt that Woodward & Sherwood had power to give credit upon the premium, and to waive that condition of the policy which required its payment before the liability of the company should attach. This was not denied at the trial. They were the agents of the defendant to transact generally its business of insurance at Jersey City, in accordance with the rules and regulations of the company, and these rules and regulations, it is agreed, provided for credit by special arrangement. Neither can there be any doubt that there was a waiver of the advance payment in this case, if it could be done in any other manner than by an express agreement to that effect indorsed upon the policy. This case is not materially different from that of Miller v. Brooklyn Life Ins. Co., 12 Wall. [79 U. S.] 285, in which it was said that "where the policy is delivered without requiring payment, the presumption is, especially if it is a stock company, that a credit was intended, and the rule is well settled where a credit is intended, that the policy is valid though the premium was not paid at the time the policy was delivered, as where credit is given by the general agent, and the amount is charged to him by the company, the transaction is equivalent to payment."

The real question then, is, whether this case falls within the provision of the policy which is relied upon. The language is not that there can be no waiver unless an indorsement to that effect is made upon the policy, but that "the use of general terms, or anything less than a distinct and specific agreement, clearly expressed and indorsed upon the policy, shall not be construed," etc. This is no more than providing that nothing shall be construed as a waiver that is less distinct or specific than an agreement clearly expressed and indorsed on the policy would be. Here the acts are clear, distinct, and specific, and the intention of the parties is unmistakable. The policy was delivered, and simultaneously with the delivery the brokers, with their consent, were charged in general account for the premium. The case is in effect as it would have been if, upon the delivery of the policy, the agents had accepted the note of the brokers for the amount of the premium payable on demand. A charge in

account on book, with the consent of the party charged, is equivalent to an agreement by him to pay on demand the amount charged. We can hardly believe it will be seriously contended that if these brokers had in fact given their due-bill for the premium when the policy was delivered, an indorsement to that effect on the policy would be necessary to charge the company with liability.

In our opinion the charge on book, under the circumstances, made as it was in the usual course of business according to the custom of the trade, and known and assented to by the officers of the company, is to be treated as the equivalent of payment, and not as the waiver of the condition only. Certainly the acceptance of a note for the amount would have been such an equivalent, and we can see no difference in principle between that case and this. The brokers would be as much liable for the payment of the premium in the one case as in the other. If by any chance the premium could not be collected, ample protection was furnished the company against a continuance of the risk by that clause in the policy which authorizes its termination at the option of the company, on giving notice to that effect. This seems to have been relied upon by the agents as a means of protection against loss, under the practice which prevailed of delivering policies in advance of the payment of premiums, for it is proven to have been a part of the custom to cancel the policies upon notice if payment was not made within a reasonable time.

Let judgment be entered in favor of
the plaintiff for.................. $763 13
Less charges for premium and policy
unpaid ......................... 33 50
                                  ———————
                                  $729 63

And interest from December 17th, 1875.

———

BANG v. The THEODOR HEINRICH. See Case No. 7,215.