# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

WYTHEVILLE INS. & BANKING CO. v. TEIGER.

NOVEMBER 9th, 1893.

Absent, Richardson and Hinton, JJ.

1. INSURANCE—*Delivery—Waiver.*—It is a waiver of the condition of prepayment to deliver a policy without requiring prepayment of premiums.
2. IDEM—*Payment of premiums.*—Where company charges premiums personally to the agent, who gives credit to the insurer, *held*, it amounts to payment.
3. IDEM—*Apparent Agent—Estoppel.*—When insurance company clothes a person with apparent authority to deliver policies and receive premiums, *held*, it is estopped, after policy is delivered to innocent holder, to set up a defence that the agent acted without written authority.
4. IDEM—*Instructions—Payment.*—Plaintiff was insured against loss by fire by defendant, who delivered the policy to brokers who had placed for it many policies, remitting premiums at intervals. They delivered policy to plaintiff's agent without collecting premium. Afterwards, before the loss, plaintiff paid premium to agent, who paid brokers a sum which he testified included the premium, and took receipt "on account of miscellaneous companies." Policy provided that company should not be liable until premium actually paid. The trial court instructed that if the premium was embraced in the sum the agent paid the broker, the jury should find that the premium had been paid; *held*, no error.
5. DEPOSITIONS—*Notice.*—Where defendant had been notified by plaintiff's attorneys in this suit of their intention to take depositions in the State of Georgia in another suit wherein the plaintiff was not interested, on the same day that depositions were taken in this suit in the city of New York, *held*, the defendant's motion to suppress the depositions taken in this suit was properly overruled.

Argued at Wytheville.    Decided at Richmond.

Error to judgment of circuit court of Wythe county, rendered at the March term, 1893, in an action of trespass on the case in *assumpsit*, wherein Samuel Tieger was plaintiff, and the Wytheville Insurance and Banking Company, a Virginia corporation, was defendant.   The jury found a verdict for the plaintiff for $798, which the court refused to set aside, and there was judgment accordingly, to which judgment the defendant company obtained a writ of error and *supersedeas* from one of the judges of this court.   Opinion states the case.

*F. S. Blair*, for plaintiff in error.

*Walker & Caldwell*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

By the policy sued on, the defendant company insured the plaintiff against loss or damage by fire on a stock of goods in New York.   The company sent the policy, for delivery and collection of the premium, to Milch, Fleisner & Co., insurance brokers, of that city.   This firm had placed many policies of the defendant company, and received the premiums.   Their custom, according to the evidence, was to remit to the company " sometimes once a month, sometimes twice a month, and sometimes once in sixty days, depending upon the amount of the premiums collected."

The policy sued on was issued on the 1st of December, 1891, and was delivered to the plaintiff's agent a day or two afterwards, without payment of the premium.   This agent was one Adler, an insurance agent, to whom the plaintiff paid the premium, and who, on the 23d of December, 1891, paid to Milch, Fleisner & Co. eighty dollars, for which he took their receipt as follows: " Received from Edward Adler eighty dollars on account miscellaneous companies."   The premium on the plaintiff's policy was $6, which, Adler says, was included in

the payment above mentioned. The goods were destroyed by fire on the 13th of February, 1892. The policy recites that it is issued·"subject to the stipulations and conditions of the New York standard form of policy"; and further that "this company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor be actually paid."

In this state of things the main ground upon which the company denies liability is that the premium was not paid.

Upon the question whether the premium was paid to Milch, Fleisner & Co., the circuit court instructed the jury as follows: "If the jury believe that the sum of $80 paid by Adler to Milch, Fleisner & Co. on the 23d of December, 1891, embraced the premium on the plaintiff's policy, and that said premium formed part of the said $80, then the jury will find that the said premium was paid to Milch, Fleisner & Co. on the 23d December, 1891."

Another instruction, given at the instance of the plaintiff, was as follows:

"The court instructs the jury that if they believe from the evidence that the defendant company delivered the policy sued on to Milch, Fleisner & Co., who delivered it to Adler, who delivered it to the plaintiff, and further believe that at no time after the policy was so delivered and before the fire occurred, did the defendant company give the plaintiff notice that it wished to cancel the policy, then they must find for the plaintiff."

The first of these instructions, although both were excepted to, was clearly right. The defendant denied that the payment of eighty dollars to Milch, Fleisner & Co. embraced the premium on the plaintiff's policy, and the question was, therefore, properly submitted to the jury. Nor is there anything in the second instruction to the injury of the defendant, although it may be open to some criticism. Its meaning is clear, and the jury could not have failed to understand it correctly. The evidence on both sides shows that the policy was sent to

Milch, Fleisner & Co. as the defendant's agents; so that if there was an assumption of the fact in the instruction that Milch, Fleisner & Co. were agents of the defendant, it assumed as a fact what the defendant itself had proved.

The case, on the merits, turns upon the effect of the delivery of the policy by Milch, Fleisner & Co.; and upon this point, also, we are of opinion that the case is with the plaintiff.

The firm of Milch, Fleishner & Co. were not only brokers, but, as just said, they were agents of the defendant company. Policies were sent to them directly from the home office, the premiums on which they were authorized to receive, and they were ostensibly authorized to waive a cash payment. Hence, when they delivered the policy in the present case, without requiring payment of the premium, the presumption is a credit was intended, and that was a waiver of the condition of prepayment. If in such a case a waiver were not implied, the delivery of the policy would be not only an unmeaning but a deceptive and fraudulent ceremony. 2 May, Ins. (3d ed.), sec. 360; *Miller* v. *Life Ins. Co.*, 12 Wall., 285; *Bochen* v. *Williamsburgh Ins. Co.*, 35 N. Y., 131; *South. Life Ins. Co.* v. *Booker*, 9 Heisk. (Tenn.), 606, 613; *Farnum* v. *Phœnix Ins. Co.*, 83 Cal., 246, and cases cited.

Moreover, it is fair to infer from the fact of giving credit in the present case, and the custom of those agents to remit to the company only once or twice a month, and sometimes not oftener than once in two months, that they were in the habit of delivering policies on credit, and that this was known and assented to by the company. *Lebanon Ins. Co.* v. *Hoover*, 113 Pa. St., 591; *Insurance Co.* v. *Norton*, 96 U. S., 234.

It would seem, also, from what was brought out in the cross examination of the vice-president of the company, as a witness in the case, although he does not say so in so many words, that the practice of the company was to charge these agents personally with the premiums on policies sent to them. He says

they still owe for a number of policies, some of which have expired. And if they were, in fact, charged with the premium on the plaintiff's policy when the policy was sent, then, as between the plaintiff and the company, the premium was paid when the policy was delivered; for the rule is well settled that where the agent gives credit and the amount is charged to him by the insurer, the transaction is equivalent to payment. *Miller* v. *Life Ins. Co.*, 12 Wall., 285; *White* v. *Conn. Ins. Co.*, 120 Mass., 330; *Train* v. *Holland Ins. Co.*, 62 N. Y., 598; *Bang* v. *Farmville Ins. Co.*, 1 Hughes, 290.

It is immaterial, therefore, so far as the validity of the policy is concerned, whether the $80 paid by Adler embraced the plaintiff's premium or not. The policy having been delivered as a valid, executed contract, the only way the company could terminate its liability thereon for non-payment of the premium—if the premium was not paid—was by exercising the reserved right to cancel it, after " giving five days' notice of such cancellation," which was not done. 2 May, Ins. (3d ed.) sec. 360 B.

Complaint, however, is made of the refusal of the circuit court to instruct the jury that if there was no application of any part of the $80 to the plaintiff's premium at the time of such payment, then that the premium was not discharged; and further, that after the fire occurred, no valid application of any part of the payment could be made for that purpose by any agreement between the plaintiff or Adler and Milch, Fleisner & Co.

This instruction was rightly refused. The latter part of it is not relevant to any evidence in the case; and as to the first part, it is enough to say that it is virtually covered by the first instruction given for the plaintiff. *Ferguson's adm'r* v. *Wills*, 88 Va., 136. Adler testified emphatically that the payment embraced the plaintiff's premium, and upon that question the jury found against the defendant.

The court was also asked, but rightly refused, to instruct the

jury that if they believed from the evidence that the brokers who delivered the policy were not appointed as agents by the defendant company in conformity with the New York standard form of policy, then it was their duty to have retained the policy until the premium was paid, and that if they failed to pay over the premium to the company before the fire occurred the policy was vitiated.

The New York standard form of policy, subject to the stipulations and conditions on which the policy was issued, provides that " in any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company." But without going more fully into the questions sought to be raised by the instruction, it is enough to say that when an insurance company clothes a person with apparent authority to deliver policies and receive the premiums, as was done in this case, it is estopped, after a policy is delivered as a valid contract to an innocent holder, to set up the defence that the agent acted without written authority from the company. Such a defence, if sustained, would operate as a gross fraud, and can receive no countenance in a court of justice. *Ins. Co.* v. *Wilkinson*, 13 Wall., 222, 235 ; *Furnum* v. *Phœnix Ins. Co.*, 83 Cal., 246, 257 ; S. C., 23 Pac. Rep , 869 ; *Ga. Home Ins. Co.* v. *Kinnier*, 28 Gratt., 88 ; *Manhattan Fire Ins. Co.* v. *Weill & Ullman, Ibid.* 389, 395.

There are two questions, of less importance, which remain to be considered. The first relates to the overruling of the defendant's motion to suppress certain depositions for the plaintiff, taken in New York on the 14th of December, 1892. The ground of the motion was that the defendant had been notified in another suit of the taking of depositions, in the State of Georgia, on the same day, and that the counsel who gave the notice were the attorneys for the plaintiff in this suit. The latter, however, was in no way interested in, or connected with, the other suit; and, besides, no objection was raised until the calling of the present case for trial, which was several

months after the depositions had been taken.   The motion was
without merit, and was rightly overruled.

Nor was there error in overruling the defendant's motion for
a continuance on the ground of the absence of an alleged ma-
terial witness.   The witness formerly did business at 150 Nassau
street, New York, from which place he addressed a letter to
the defendant company, dated February 17, 1892.   The pre-
sent suit was commenced in the following August, depositions
for the plaintiff were taken in December of the same year, and
yet no effort appears to have been made to find the witness, or
even to communicate with him, until some time in January,
1893, when the defendant's attorney, being in New York,
made, as he says, "diligent search" for him without success.
He did not, however, inquire for him at 150 Nassau street, be-
cause his former partners said he had gone out of business and
that they had not been able to find him.   Nor did he attempt,
for aught that appears, to communicate with him through the
mail, or to find him by looking in the New York city direc-
tory.   We are of opinion that the record does not show due
diligence on the part of the defendant to obtain the testimony
of the absent witness.   A motion for a continuance is ad-
dressed to the sound discretion of the court, and its ruling in
the matter will not be reversed by an appellate court unless
plainly erroneous.

JUDGMENT AFFIRMED.

NOTE BY REPORTER.—See *Michigan Pipe Co.* v. *M. F. & M. Ins. Co.*, 20 L.
R. A., 277, as to when an insurance agent is to be treated as the agent of the
assured.