## BIRD et al. v. HALSY.

(Circuit Court, W. D. Virginia. March 22, 1898.)

1. DEPOSITIONS—EXHIBITS SEPARATELY MAILED—NOT IRREGULAR.

No merit lies in attaching exhibits to depositions other than that of safety in preserving and identifying them as parts of the depositions. If this identification be made clear, and especially if it be not denied that they are the exhibits in question, the exhibits cannot be deprived of their char-

acter as part of the depositions because they are, for convenience or for any other reason, mailed to the clerk in a separate package.

**2.** SAME—INDORSEMENT OF EXHIBITS.

No formal certificate is necessary to be attached to exhibits in order to make them parts of the deposition in which reference is made to them. If the indorsements of the examining commissioner on the exhibits and depositions be made by the same person, and the exhibits are so described and marked by the commissioner that their identity is unmistakably established, this is sufficient.

**3.** SAME—REFUSAL TO TESTIFY—SUPPRESSION OF TESTIMONY—EXCEPTIONS DELAYED.

The whole of a deposition may be suppressed on the ground that a witness has refused to answer a material question; but where no effort is made to compel him to answer, no notice given of an intention to move for suppression because of the refusal, and the depositions are subsequently received and opened by agreement, and two terms intervene before such a motion is made, it is then too late to urge it.

**4.** SAME.

Rev. St. §§ 863, 864, providing for the manner and methods of taking depositions, apply to the taking of depositions within the United States, and have no application to foreign countries.

**5.** SAME—FAILURE TO OBJECT—WAIVER.

Objections to depositions because of informalities in the notice to take and in the certification, etc., are waived where the objecting party has consented to the issuing of the commission, and practically united with opposing counsel in executing it, and where no notice of the objections is given, or motion to suppress made, until the trial is in progress.

**6.** EVIDENCE—GENERAL REPUTATION—PARTICULAR STATEMENTS—INADMISSIBILITY.

Evidence to prove the general reputation of a person for integrity, honesty, and fair dealing is governed by the same principles that apply in a case of the impeachment of a witness for truth and veracity; and particular statements made by persons with whom the party has had financial dealings, based on the failure or inability of the said party to meet his pecuniary obligations, especially when made by persons living remote from the accused, are inadmissible.

**7.** SAME — ACTS ADMITTED ALLEGED TO BE FRAUDULENT — SIMILAR TRANSACTIONS IRRELEVANT.

Where acts are admitted which are alleged to be fraudulent, it is irrelevant to prove other similar transactions with other persons in order to show a fraudulent intent on the part of the accused.

This was an action of assumpsit by Walter Bird & Co. against S. P. Halsy. The case was heard on motions made by both parties to suppress certain depositions.

R. G. H. Kean and F. S. Kirkpatrick, for plaintiffs.

Blackford, Horsley & Blackford and John W. Daniel, for defendant.

PAUL, District Judge. The defendant moves to suppress certain depositions taken by the plaintiff in this case on the following grounds:

"Because the witnesses respectively refused to answer material questions propounded by the defendant on cross-examination [the questions being designated by their serial numbers, 28 in all], and all other questions which the witness [Frederick Victor Chalmers] refused to answer." "And all of said depositions taken in England are moved to be suppressed for the further reason that the exhibits which are alleged to have been filed with the questions and answers were not returned by the officer taking said depositions along with said depositions, and that certain papers sent by said officer under a separate cover,

and in a different way, are not properly certified; **and**, even if they were, they would have to be returned attached to the depositions as a part thereof. No exhibit was returned with the same." "There is no return of what purports to be Exhibit No. 1. The other exhibits referred to in said depositions purport to be numbered from 2 to 10, inclusive."

The depositions which the court is asked to suppress were taken on behalf of the plaintiffs in London, England, on the 9th, 10th, and 11th days of August, 1897, and were sent by registered mail to the clerk of this court on the 27th day of August, 1897. They were opened by agreement of counsel prior to the commencement of the regular term of this court in September, 1897. At that term of the court the plaintiff, whose home is in England, was present, and pressing for a trial; but the case was continued on motion of the defendant. There was an adjourned term of this court held in December, 1897. On the first day of the present term the plaintiff moved the court to fix a day of the present term of the court for the trial of the case. Thereupon the defendant interposed this motion to suppress the depositions. The court will consider first that branch of the motion to suppress which is based on the fact that "the exhibits which were alleged to have been filed with the questions and answers were not returned by the officer taking the depositions along with said depositions, and that certain papers sent by said officer under a separate cover and in a different way are not properly certified; and, even if they were, they would have to be returned attached to the depositions as a part thereof. No exhibit was returned with the same." The depositions proper were forwarded in one package, and the exhibits referred to in the depositions, and by designations therein made part thereof, mailed to the clerk in a separate package. The manner of identifying the exhibits in the depositions in a few cases will serve to show how all of them are identified: In the examination of Frederick Victor Chalmers, a witness on the part of the plaintiff, at question 26, page 8, of the depositions, it is noted by the officer taking the depositions: "* * * The paper referred to in question No. 25 was at the same time marked by the commissioner 'Mr. Frederick Victor Chalmers' evidence No. 2, and signed by the commissioner, and dated 9/8/97.'" On examining the exhibits, I find that the paper referred to in question No. 25 as Exhibit No. 2 is marked "Mr. Frederick Victor Chalmers' evidence No. 2. J. Wesney Ward. 9/8/97." In the examination of George Alfred Wills, another witness for the plaintiff, following question 126, on page 25, it is noted by the commissioner as follows: "Four letters were handed by Mr. Kirkpatrick to the witness, who read them. They are dated, respectively, 2d January, 1892, 24th January, 1893, 18th April, 1893, and 26th April, 1893; and were then respectively marked by the commissioner 'Mr. George Alfred Wills' Evidence,' and numbered respectively 'No. 3,' 'No. 4,' 'No. 5,' and 'No. 6,' and all of them were signed by the commissioner, and dated 9.8.97." On examining the exhibits, I find the four papers referred to, and I find them marked "No. 3," "No. 4," "No. 5," and "No. 6," each indorsed, "Mr. George Alfred Wills' Evidence," and signed "J. Wesney Ward. 9.8.97." Accompanying the exhibits is a letter from the commissioner to the clerk, which is as follows:

87 F.—43

"Ward & Asplin,  Registered  37 Lime Street,
Solicitors.  10 Encls.  London, 27 August, 1897.
E. C.

"Bird v. Halsy.

"Dear Sir: I have to-day sent to you, by registered post, as 'commercial papers,' the depositions taken by me in this suit. I now inclose herewith the ten documents put in as exhibits in evidence with such depositions, and shall be obliged by your acknowledging to me, in due course, the safe receipt of all these documents. Your acknowledgment by post card will be quite sufficient. I am yours, faithfully,  J. Wesney Ward.

"The Clerk, Circuit Court of the United States, Western District of Virginia, Lynchburg, Virginia, U. S. A."

An examination of the depositions and of the exhibits leaves no doubt as to their identity and connection. Fastening the exhibits to the depositions of which they are a part cannot more completely identify them with the depositions than these exhibits are by the description of them given by the commissioner in the examination of the witnesses, and indorsed by him on the exhibits themselves. The court can conceive no merit in attaching the exhibits to the depositions, other than that of safety in preserving the exhibit, and identifying it as part of the deposition. If this identification is made clear and unmistakable, as in this case, the exhibits cannot be deprived of their character as part of the deposition because they are, for convenience or any other reason, mailed to the clerk in a separate package. It is not pretended by counsel for the defendant in the argument of the motion to suppress these depositions that the exhibits sent in a separate package to the clerk, with the letter of the commissioner to the clerk, are not in fact the exhibits referred to in the examination of the witnesses, and made part of their depositions.

It is also objected by the defendant's counsel that "there is no return of what purports to be Exhibit No. 1." But the exhibit to the absence of which this objection is made has been produced by one of the counsel for the plaintiff, in whose hands it was for examination, and it is conceded that it came to the clerk in the same package with the other exhibits. I find it marked, "Mr. Frederick Victor Chalmers' Evidence No. 1," and signed "J. Wesney Ward. 9.8.97,"—just as it is designated in the depositions.

It is further objected by counsel for the plaintiff that the exhibits sent by the commissioner to the clerk are not properly certified. We have seen how the exhibits are described in the depositions, and how they are indorsed. An examination of the signature of the commissioner attached to the depositions and the indorsements of the exhibits shows that they were made by the same hand, and are the signatures of the same person. The court knows of no formal certificate necessary to be attached to an exhibit in order to make it a part of the deposition in which reference is made to it. These exhibits are so described in the depositions, and are so marked by the commissioner as such exhibits that the description and marks unmistakably establish their identity. And this is sufficient. That the whole of a deposition may be suppressed on the ground that a witness has refused to answer a material question is well established. In Sturm v. Insurance Co., 63 N. Y. 87, the court of appeals of New York said:

"It may be taken as a rule that, where a party is deprived of the benefit of the cross-examination of a witness by the act of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means other than the act of God, the act of the party himself, or some cause to which he assented, that the testimony given on the examination in chief may not be read. People v. Cole, 43 N. Y. 508; Smith v. Griffith, 3 Hill, 333. See Forrest v. Kissam, 7 Hill, 465. And the rule may be applied to the examination of a witness on commission, or conditionally out of court, in case the party desiring the benefit of a cross-examination has not been present or represented at the taking of the testimony, and had no opportunity to push his cross-examination, or to know of the refusal of the witness to testify, or of other like misconduct of the witness. Smith v. Griffith, supra. But where the party is present at the examination of the witness in person or by counsel, and is thus fully apprised of the facts upon which he afterwards relies at the trial to suppress the testimony, and does not at the examination, or afterwards before the trial, seek to avail himself of them to that end, or to procure for himself before or at the trial the benefit of a full cross-examination, he may not. waiting until the trial, then for the first time object to the reading of the deposition, or move to suppress it. He should take an earlier opportunity for action, so that, if successful, his opponent might move for a commission to examine his witness anew out of court, or might obtain a personal attendance at the trial."

In Howard v. Manufacturing Co., 139 U. S. 205, 11 Sup. Ct. 502, the supreme court said:

"It is the settled rule of this court that the failure of a party to note objections to depositions of the kind in question when they are taken, or to present them by a motion to suppress, or by some other notice, before the trial is begun, will be held to be a waiver of the objections. Whilst the law requires due diligence in both parties, it will not permit one of them to be entrapped by the acquiescence of the opposite party in an informality which he springs during the progress of the trial, when it is impossible to retake the depositions."

It does not appear from the depositions that counsel for the defendant, though present at the time the witness refused to answer the questions propounded on cross-examination, then entered any objection to the reading of the depositions for that reason, or gave any notice to the plaintiff that he would move the court to suppress the depositions on the ground of the refusal of the witness to answer the questions on cross-examination. It also does not appear that any steps were taken by the commissioner, or any effort made by counsel for the defendant, to have the commissioner apply to a court of competent jurisdiction to compel the witness to answer the questions propounded to him on cross-examination, or be punished for contumacy in refusing to do so. On this subject the supreme court of Indiana says:

"Where a witness under examination before an officer not having power to punish for contempt refuses to answer a proper question, the officer should report to a court having jurisdiction, and ask it to compel an answer, or punish the contumacious witness. On the principle of comity, the courts of the state where a deposition is taken to be used in another state will exercise its authority, when appropriately invoked, to secure competent testimony, and will assist an officer within its jurisdiction, when assistance is properly asked, to secure answers to competent questions." Keller v. B. F. Goodrich Co., 19 N. E. 199.

That the English courts have power, when appropriately invoked, to compel contumacious witnesses, before an officer authorized to take depositions within their jurisdiction, to answer competent questions. is asserted by counsel for the plaintiff, and is not denied by counsel

for the defendant. No effort having been made by the defendant to compel the witness to answer the questions propounded to him on cross-examination; no notice having been given by the defendant of a motion to suppress the depositions on the ground of the refusal of the witness to answer the questions propounded to him on cross-examination, and the depositions having been received by the clerk, and, by agreement of counsel, opened more than six months prior to the present term of the court, two terms having intervened at which such motion might have been made,—the court holds that the motion to suppress now made comes too late. Counsel for the defendant insist that the case had not been called for a trial when the motion to suppress was interposed, but the court is of opinion that, so far as the motion to suppress is concerned, the case was practically called for a trial when the plaintiff moved the court to fix a day during the present term for the trial. In view of the great distance which the plaintiff has now twice traveled in order to secure a trial of this case, and the fact that the witness whose deposition it is sought to suppress is not within the reach of the process of the court, but lives in a foreign country, it would work a very great injustice and hardship to the plaintiff to sustain the motion to suppress these depositions. The court, in the exercise of the sound discretion with which it is invested, overrules the motion to suppress the depositions.

The defendant, S. P. Halsy, by counsel, also moves the court to suppress certain depositions offered on behalf of the plaintiff on the ground that they are not certified in accordance with the provisions of section 864 of the Revised Statutes of the United States, in this, to wit: that the certificate does not state that the testimony of the witnesses was reduced to writing by the commissioner taking the depositions, or by the witness himself in the magistrate's presence, and by no other person. The section of the Revised Statutes of the United States on which this motion is based is as follows:

"Sec. 864. Every person deposing as provided in the preceding section shall be cautioned and sworn to testify the whole truth, and carefully examined. His testimony shall be reduced to writing by the magistrate taking the deposition, or by himself in the magistrate's presence, and by no other person, and shall, after it has been reduced to writing, be subscribed by the deponent."

The preceding section of the Revised Statutes of the United States referred to in section 864 is section 863, and is as follows:

"Sec. 863. The testimony of any witness may be taken in any civil cause depending in a district or circuit court by deposition de bene esse, when the witness lives at a greater distance from the place of trial than one hundred miles, or is bound on a voyage to sea, or is about to go out of the United States, or out of the district in which the case is to be tried, and to a greater distance than one hundred miles from the place of trial, before the time of trial, or when he is ancient and infirm. The deposition may be taken before any judge of any court of the United States, or any commissioner of a circuit court, or any clerk of a district or circuit court, or any chancellor, justice, or judge of a supreme or superior court, mayor or chief magistrate of a city, judge of a county court or court of common pleas of any of the United States, or any notary public, not being of counsel or attorney to either of the parties, nor interested in the event of the cause. Reasonable notice must first be given in writing by the party or his attorney proposing to take such deposition, to the opposite party or his attorney of record, as either may be

nearest, which notice shall state the name of the witness and the time and place of taking his deposition; * * * and whenever, by reason of the absence from the district and want of an attorney of record, or other reason, the giving of the notice herein required shall be impracticable, it shall be lawful to take such depositions as there shall be urgent necessity for taking, upon such notice as any judge authorized to hold courts in such circuit or district shall think reasonable and direct. Any person may be compelled to appear and depose as provided by this section in the same manner as witnesses may be compelled to appear and testify in court."

An examination of this statute shows clearly that its provisions apply to the taking of depositions of witnesses within the United States, and have no application to the taking of depositions of witnesses in a foreign country. This is clearly shown by the designation of the officials before whom the depositions may be taken. They may be taken before the following federal officials, viz.: "Any judge of any court of the United States, or any commissioner of a circuit court, or any clerk of a district or circuit court;" or before any of the following state officials, viz.: "Any chancellor, justice or judge of a supreme or superior court, mayor or chief magistrate of a city, judge of a county court, or court of common pleas, of any of the United States, or any notary public not being counsel or attorney to either of the parties, nor interested in the event of the cause." Further, it confers authority on the official to take a deposition de bene esse in the following cases only: (1) Where the witness lives at a greater distance from the place of trial than 100 miles. This does not mean living in a foreign country. The language used in the United States statutes when providing for taking the deposition of a person living in a foreign country is, "the testimony of any witness in a foreign country." (2) Where the witness is bound on a voyage to sea; (3) or is about to go out of the United States; (4) or out of the district in which the case is to be tried, and to a greater distance than 100 miles from the place of trial, before the time of trial; (5) or when he is ancient and infirm. Harris v. Hall, 7 How. 693. The cases cited by counsel for the defendant in support of the motion to suppress are all of them cases in which the depositions rejected were taken within the United States. Bell v. Morrison, 1 Pet. 351; Cook v. Burnley, 11 Wall. 659; and the other cases cited. I have not found a case, nor do I think one can be found, in which a court has held that the provisions of section 864 of the Revised Statutes of the United States apply to depositions taken in a foreign country. The motion to suppress the depositions will be overruled.

The defendant, S. P. Halsy, by counsel, moves to suppress and reject the depositions of Chalmers and others, offered on behalf of the plaintiff, on the grounds that "it has not been made to appear, as required by section 865 of the Revised Statutes of the United States, that any one or all of the said witnesses is now 'dead, or has gone out of the United States, or to a greater distance than one hundred miles from the place where the court is now sitting, to wit, at Lynchburg, Virginia, or that by reason of age, sickness, bodily infirmity, or imprisonment he is unable to travel and appear at court,' and the defendant says that in such case it is provided by section 865 of the Revised Statutes of the United States that 'such deposition shall not be used in

the cause.'" These depositions were taken in London, England, on the 9th, 10th, and 11th days of August, 1897. Notice of the time and place of taking them was accepted by counsel for the defendant. Both parties appeared by counsel. The witnesses were examined and cross-examined. No objection was made at any time during the taking of the depositions to the competency of the officer taking the same, or to the regularity of the proceedings in any respect. The signatures of the witnesses to their depositions were waived by mutual consent, and it was further agreed by counsel for both parties that the commissioner taking the depositions should transmit them by mail to the clerk of this court. . The depositions were mailed on August 27, 1897, were received by the clerk in due course of mail in the early part of September, 1897, and by agreement were opened by counsel for the parties. The case was first called for trial at the September term, 1897, of this court, which commenced on the 14th day of September, 1897, and was continued on motion of the defendant. An adjourned term of this court was held in December, 1897. No objections to the depositions were taken on the grounds now stated until the trial of the case before the jury had progressed three days. It is unnecessary, in the view of the court, to discuss the effect of the motion had it been made before the trial commenced. It seems to the court that this case clearly falls within the principle laid down by the supreme court in Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500. The grounds of the motion to suppress in that case were as follows:

"(1) Because said deposition is not certified to by the officer who took the same, as required by law regulating the taking of depositions de bene esse; (2) because no reasonable notice was given the defendant, as required by law regulating the taking of depositions de bene esse; (3) because said deposition was not taken under authority of any dedimus potestatem granted by any court of the United States according to common usage."

The supreme court in that case, through Mr. Justice Lamar, said:

"In our opinion, the motion in this instance was too late. The counsel for defendants, by waiving copy of the interrogatories when notice of them was served upon them, and consenting to the issue of the commission, and practically uniting with plaintiff's counsel in executing it, by adding their own cross-interrogatories, and withholding the objections until after the trial had begun, must be considered as having waived such objections. It is the settled rule of·this court that the failure of a party to note objections to depositions, of the kind in question, when they are taken, or to present them by a motion to suppress, or by some other notice, before the trial is begun, will be held to be a waiver of the objections. Whilst the law requires due diligence in both parties, it will not permit one of them to be entrapped by the acquiescence of the opposite party in an informality which he springs during the progress of the trial, when it is not possible to retake the deposition."

The same principle is announced in Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950. Justice Jackson, delivering the opinion of the court, said:

"If the deposition was in any respect open to irregularities, the motion to suppress it, under the circumstances, came too late. Such motions should be made before the case is called for trial, so as to afford opportunity to retake the testimony or correct defects in the taking of the deposition,"—and cites Howard v. Manufacturing Co., supra, and other cases.

This principle is also recognized in Banking Co. v. Teiger, 90 Va. 277, 18 S. E. 195.

In view of these decisions, and others that might be cited, the court holds that this motion comes too late. For the court to hold otherwise would be to contravene a fixed principle of our laws, federal and state, and might work great injustice. The motion will be overruled.

The plaintiff objects to the reading to the jury of the deposition of James N. Boyd, taken on behalf of the defendant. The deposition is offered for the purpose of impeaching the character of the plaintiff for integrity and fair dealing in commercial transactions. The objection of the plaintiff, which was noted at the taking of the deposition, is based on the ground that the witness has not shown such an acquaintance with the general reputation of the plaintiff for integrity and fair dealing as qualifies him to speak thereto. The witness is asked by the attorney for the defendant:

"Third Question. Do you know, by reputation, Walter Bird, of the firm of Walter Bird & Co., of London, England? Ans. I have heard of the firm ever since I have been in business. I think fifteen or twenty years ago I made them a small shipment of tobacco. Fourth Question. Will you please state what is, at this time, the reputation of that house for integrity and fair dealing in commercial transactions? Ans. At this time it is not good with the leaf tobacco men. Fifth Question. Are you familiar with their reputation with the leaf tobacco men? Ans. I am with our leaf tobacco men here. I have heard several of them say that they didn't consider Mr. Bird treated them right when he made his failure in England. I have heard the bank officers at the Planters' Bank say that the drafts drawn on them by their customers were dishonored, and returned here to be paid, after the bank had indorsed those drafts and sold them. Those are the two lines that make me answer 'not good.' "

The production of evidence to prove the general reputation of a person for integrity, honesty, and fair dealing is governed by the same principles that apply in a case of the impeachment of a witness for truth and veracity; at least the court sees no reason why such is not the case. When the credit of a witness is called in question (Greenl. Ev. § 464), "the examination must be confined to his general reputation, and not be permitted as to particular facts; for every man is supposed to be capable of supporting the one, but it is not likely that he should be prepared to answer the other, without notice; and, unless his general character and behavior be in issue, he has no notice. This point has been much discussed, but may now be considered at rest." The doctrine as to reputation is thus stated in Teese v. Huntingdon, 23 How. 11:

"Courts of justice differ very widely whether the general reputation of the witness for truth and veracity is the true and sole criterion of his credit, or whether the inquiry may not properly be extended to his entire moral character and estimation in society. They also differ as to the right to inquire of the impeaching witness whether he would believe the other on his oath. All agree, however, that the first inquiry must be restricted either to the general reputation of the witness for truth and veracity, or to his general character; and that it cannot be extended to particular facts or transactions, for the reason that, while every man is supposed to be fully prepared to meet those general inquiries, it is not likely he would be equally so without notice to answer as to particular acts. * * * Both Mr. Greenleaf and Mr. Taylor agree, however, that the impeaching witness must be able to state what is

generally said of the other witness by those among whom he resides, and with whom he is daily conversant, and, in effect, admit that unless he can so speak he is not qualified to testify upon the subject, for the reason that it is only what is generally said of the witness by his neighbors that constitutes his general reputation."

The latest case decided by the supreme court in which this question is discussed is that of Williams v. U. S., 168 U. S. 382, 18 Sup. Ct. 92, in which it is held that "the estimate placed upon the character of a government employé by the community cannot be shown by proof only of the estimate in which he is held by his co-employés" (in this case in the custom house at San Francisco, Cal.); and, further, that "the prosecution should have been restricted to such proof touching the character of the accused as indicated his general reputation in the community in which he resided." Applying the doctrine as thus defined to the testimony of the witness Boyd, it is clearly inadmissible. He speaks of particular statements and criticisms made by persons with whom the plaintiff has had financial transactions, based on the failure or inability of the plaintiff to meet his pecuniary obligations. Besides, these statements are made by persons living remote from the home and place of business of the plaintiff. If we should relax the rule, as contended for by counsel for the defendant,—which cannot be done,—and allow it to include persons with whom the plaintiff has had business transactions, living remote from the plaintiff's neighborhood and established place of business, still we are confronted with the requirement that the testimony must be confined to general reputation, and cannot extend to particular facts. The deposition of the witness Boyd must, for the reasons given, be suppressed.

The plaintiff also moves to suppress the deposition of John P. George, taken in behalf of the defendant, on the ground that the same is irrelevant and immaterial. The objections were noted at the taking of the depositions. This motion involves an examination of certain defenses set up by the special pleas filed by the defendant. These pleas are five in number. Numbers 1 and 2 are substantially the same, and are, in substance, that, contrary to the promises and undertakings made by the plaintiff to the defendant, the plaintiff failed to use due diligence in selling the tobacco consigned to him from time to time by the defendant, and delayed selling the same for a long and unreasonable time, whereby the tobacco was injured, and sold for a much less price than it would have sold for if it had been sold within a reasonable time; and that the plaintiff did not obtain the highest price for said tobacco which could reasonably be obtained upon the market, but sold it for a price much less than could reasonably have been obtained upon the market.

The special plea numbered 3 is to the effect that, relying upon the promises and undertakings made by the plaintiff to the defendant, the defendant consigned and delivered to the plaintiff large quantities of tobacco from time to time, to be sold by the plaintiff as factor or commission merchant for and on behalf of the defendant; but the plaintiff, disregarding his promises and undertakings aforesaid, did wrongfully appropriate the said tobacco to his, the said plaintiff's, own use, without the knowledge or consent of the defendant.

The special plea numbered 4, after reciting, as in the other pleas, the promises and undertakings made by the plaintiff to the defendant, is as follows:

"That, relying upon said promises and undertakings of the plaintiff, the defendant consigned and delivered to the plaintiff large quantities of tobacco from time to time, to be sold by the plaintiff as factor or commission merchant for and on behalf of the defendant, but that the plaintiff, disregarding his promises and undertakings aforesaid, did not sell and dispose of the tobacco consigned and delivered to him as aforesaid, for the highest price reasonably to be obtained upon the market, and did not faithfully and honestly account with and pay over to the defendant the proceeds of the said tobacco delivered as aforesaid, and did not true returns make of the sales of said tobacco, but, contriving craftily, and subtly intending to deceive and defraud the said defendant in this behalf, did wrongfully appropriate said tobacco to his (the plaintiff's) own use, without the knowledge or consent of the said defendant."

The special plea numbered 5, after reciting the promises and undertakings made by the plaintiff to the defendant, is as follows:

"That, relying upon said promises and undertakings of the plaintiff, the defendant consigned and delivered to the plaintiff large quantities of tobacco from time to time, to be sold by the plaintiff as factor or commission merchant for and on behalf of the defendant, but the plaintiff, disregarding his promises and undertakings aforesaid, did wrongfully pledge and hypothecate the said tobacco of the defendant to secure the said plaintiff's own debts."

The object of the testimony taken by the deposition of George is to show that he, as a tobacco merchant of Richmond, Va., consigned tobacco to the plaintiff as a commission merchant in London, England, and that the plaintiff hypothecated the said tobacco to secure loans of money borrowed by the plaintiff from the banks in London; and to show the condition of the account between the plaintiff Bird and the witness George, and for what amount the tobacco was sold that was consigned by the witness George to the plaintiff Bird, and what amount Bird still owes George on these transactions. The plaintiff has been examined in this case as a witness in his own behalf, and both in his examination in chief and on cross-examination he admitted that he had, prior to May, 1894, hypothecated the defendant's tobacco, and also the tobacco of John P. George, and of F. M. Boykin, of Richmond, of Watson & Macgill, of Petersburg, of Mr. Bass, of North Carolina, and of Mr. Matthews, of Kentucky, as collateral security to the banks of which he had borrowed money. Counsel for the defendant contend that he has a right to introduce this evidence to show that the plaintiff dealt with the tobacco of other consignors in the same or a similar manner that he dealt with the plaintiff's tobacco; that is, that he hypothecated it, along with other tobacco consigned to him, as collateral security for the payment of money borrowed by the plaintiff from the banks. They cite numerous unquestioned authorities to the effect that, where a party is charged with fraud, other similar transactions with other persons may be proved in order to show a fraudulent intent on the part of the party charged with fraud. There is no doubt of the correctness of this position where the acts which it is alleged constitute the fraud are denied; but the court, after examining every case cited and the text-books, finds no authority for the position that similar acts may be shown where the acts charged as constituting fraud are admitted,

and not denied. The fraud, if any, arises out of the acts charged and admitted to be true. Where is the necessity of proving similar acts in like dealings with other people? It seems to the court a superfluous and useless work (especially as to the transactions between the plaintiff and George), because the plaintiff has admitted and does not deny the material facts embraced in the deposition of the witness George. The transactions between the plaintiff and George touching the tobacco consigned to the former by the latter, and the state of their accounts, can have no relevancy to the issues involved in the trial of the case at bar. These issues are clearly defined, and should not be involved with irrelevant matters. If this evidence be admitted, it would impose upon the jury the necessity of investigating all of the transactions between Bird and Boykin, and each and every of the consignors whose tobacco Bird admits he hypothecated at the time he hypothecated the defendant's tobacco; thus diverting the attention of the jury from the real issues in this case on which their verdict must be rendered. The deposition of the witness George is irrelevant and immaterial, and must be suppressed.