## KRUSE, Exr v FULTON
## ULMER v FULTON

Ohio Appeals, 6th Dist, Lucas Co

Nos 2896 & 2945. Decided June 11, 1934

Fritsche & Winchester, Toledo, and Streicher & Krueger, Toledo, for plaintiffs.

John W. Bricker, Attorney General, Columbus, Maurice Meyer, Cleveland, and Charles W. Racine, Toledo, for defendant.

Howitz, Kiefer, Gates & Harnel, Cleveland, Amicus Curiae.

## OPINION

By WILLIAMS, J.

It is contended by counsel, who maintain that the appeal should not be dismissed, that the entry was not submitted to them and was erroneously entered in violation of a rule of the court below. Whether there was error in disregarding this rule of court, is not a matter that can be raised in this court on appeal. Our only alternative is to dismiss the appeal as to plaintiff.

There was also filed in the former case a cross-petition; the adjudication thereon was at a later date, and the appeal bond within time as to that.

In discussing the problem involved, we shall not seek to separate the two cases but will take up in order the questions presented.

Very elaborate briefs have been filed, emphasizing the importance of the questions raised and citing many authorities. All the problems grow out of three alleged trusts created by the bank by taking notes secured by real estate mortgages and depositing them in a trust, and issuing against them so-called participation certificates which were sold to various persons who paid full value for them, and bought them in good faith. The notes and mortgages so deposited bore interest at the rate of 6% per annum, whereas the participation certificates matured in two years and bore interest at 5% per annum. The bank reserved the right to change from time to time, in the exercise of its discretion, the notes which had been placed in the trusts, and the difference between the interest paid on the participation certificates and that received on the indebtedness belonged to the bank. No endorsement nor assignment was made of the notes and mortgages, but they were simply ear-marked with the number of the trust and set apart in the trust department of the bank. The notes were all "payable to order" and under §8135, GC were to be negotiated by "endorsement by the holder, completed by delivery". Part of the certificates were owned by the bank at the time it went into liquidation, either because they had not yet been sold or because the bank had reacquired them from holders of them.

Some question has been made as to whether valid trusts were thus created, but it seems so clear that a banking concern, with a trust charter issued under the laws of this state, can create a trust of that kind and sell participating certificates therein, that the validity of the trusts so created can not be questioned.

The most difficult question presented to this court is whether or not depositors of the bank whose notes secured by mortgage were transferred into such trust funds are entitled to off-set deposits against the amount owing upon the notes. Some of these secured notes were transferred to the trusts after they became due and some before maturity. As none of them was negotiated by endorsement, the holders of the participation certificates did not have the rights of holders in due course. 3 R.C.L., p. 1034, §241. This rule is not changed by the Negotiable Instruments Law. §§8135, 8157 and 8163, GC. In the instant case it must be borne in mind that in fact there was no transfer of the notes and mortgages to another; but the bank ceased to own them, and thenceforth held them in trust. The failure to endorse was that of the trustee and of this remissness the certificate holders had no knowledge. We can not, therefore, treat the placing of the securities in the trusts as a mere assignment.

But, if we assume momentarily, for argument's sake, that there was such an assignment, what are the statutory provisions regarding set-off as against an assigned demand?

Sec 11241, GC, contains the following provision:

When a party asks that he may recover by virtue of an assignment, the right of set-off, counter-claim and defense, as allowed by law, shall not be impaired.

Sec 11321, GC, provides as follows:

When cross demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other.

As the right of set-off "as allowed by law" can not be impaired and existing cross-demands are "deemed compensated so far as they equal each other", notwithstanding assignment, it is necessary to inquire what the right of set-off is and whether there were existing cross-demands in the instant cases.

It is a general rule that a depositor in an insolvent bank may, when the bank goes into liquidation, set off his deposit therein against a bona fide indebtedness of his own to the bank. Upon this proposition the authorities are collected in annotations found in 81 A.L.R., 938 and 82 A.L.R., 665. But in such instance the bank, being in liquidation, the rights of the depositors have accrued. A somewhat different situation is presented when a set-off is claimed against a third person who has acquired the depositors obligation from the bank by assignment or the equivalent, for such money as the depositor may have on deposit at the time of the transfer is subject to check or withdrawal and the right of set-off in a case of this character is an "exercisable" as distinguished from a "fixed"

right. So long as the bank holds the depositor's indebtedness, the depositor can cause the amount he has on deposit to be applied upon his indebtedness; however, if he does not elect to do so but continues to treat the amount as on deposit and to withdraw money therefrom or check against the amount as occasion may require, the two demands can hardly be "deemed compensated", for there is no intention on the part of the depositor to apply the deposit to the discharge of the indebtedness, and no intention on the part of the bank to have it so applied. It is clearly the intention of both that the depositor is to continue the deposit and retain his right, as a depositor, to make additional deposits and to withdraw money from the account.

A set-off is an independent cause of action and at the time the transfers of the notes and mortgages were made the depositor had no cause of action against the bank. In fact he would have no right to sue until the bank had refused to permit him to check against or withdraw money from his bank account. This is in keeping with the general rule that where a person transfers by assignment an indebtedness against one who has a cross-demand, and the assignee of the claim brings suit, the holder of the cross-demand can not set off his claim unless it was due at the time of the assignment. See **Fuller v Steiglitz, Assignee, 27 Oh St, 355**; 24 R.C.L., 840, §46. The owners of the participation certificates were innocent persons who had increased the assets of the bank by paying for the certificates in good faith, while the depositors involved allowed their notes and mortgages to remain in the hands of the bank which had a right to alienate them without any effort to have the amount on deposit applied in discharge of their indebtedness. As the depositors went on treating their accounts as open and active, under the principles of equity they should not be allowed now to claim set-off against innocent holders of participating certificates.

In the U. S. Bank & Trust Company case, 311 Penn. St., 320, there was a similar question involved, and it arose out of an attempt to set-off a deposit against a mortgage which had been transferred to a trust against which participating certificates were issued, and the court in refusing to allow the set-off used this significant language:

When the mortgage was executed and delivered, there was no obligation on the bank to keep it, nor did any such obligation thereafter arise. The Hosiery Company had no claim upon it, and had no right to insist that the bank should retain it merely because the Hosiery Company might, at some time in the future, desire to exercise its inchoate right of set-off. To adopt such a rule would destroy free alienability, and might seriously hamper the bank in the performance of its public duties. The right of set-off is an exercisable right, and not a fixed or natural right, conclusively established by the mere fact that each of the parties has a claim against the other. Until the right is exercised, either party may do what he pleases with his property. This is what the bank was doing, when it created the trust and sold the participating certificates, whereby, as both parties agree, the holders thereof became the equitable owners of the mortgage.

In many states the laws require that assets in a savings department shall be held in trust for savings depositors. In these states it has generally been held that general depositors can not have the amount of their deposits set off against their indebtedness to the savings department, the theory being that the bank holds the assets segregated in the savings department as trustee in trust for savings depositors. The authorities are collected in 16 A.L.R., 1487; 25 A.L.R., 957; 81 A.L.R. 1508; 82 A.L.R., 673. These authorities are interesting and instructive and, while not absolutely conclusive in the cases at bar, it would seem that, if assets held in trust for one purpose are protected against the set-off by depositors, other assets held by the bank in trust should likewise be protected. Equity should not, in construing trusts, favor one class of beneficiaries. The savings bank laws in the states involved require assets of savings banks to be segregated and held in trust for savings depositors. Many of the laws provide that assets so segregated and set apart shall not be mingled with other assets nor be liable for the debts of the bank until savings deposits have been paid in full. §710-165, GC, contains a similar provision as to property (other than money) held in trust by a trust company. There seems to be no good reason why trusts of this character should be put on a different basis from trusts under consideration. The beneficiaries in each instance should stand on the same footing in equity.

Having made it plain that, if the transfer of the securities to trust could be considered an assignment, set-offs could not properly be allowed, we pass to another aspect of the case. The transferee of a negotiable instrument without endorsement takes title subject to equities and defenses.

But does such transferee take subject to an offset which arises out of an independent transaction, as in the instant case?

Under the English law the rule is that such transferee takes the instrument not subject to set-off and the leading English case is Burrough v Moss (1830), 10 Barn. & C., 558; 109 Eng. Reprint, 558. There is also a later English case, Oulds v Harrison (1854), 10 Exch. 572; 156 Eng. Reprint, 566. The English rule is followed in many states, although there is a conflict in American authorities. The cases are collected in the annotation to Harris v Estabrook, 70 A.L.R., 241. We quote from the opinion in that case as follows:

The rule that a transferee, without endorsement though in good faith and for value, takes subject to equities and defenses, remains the rule. However, the rule is not decisive of this case, for many well-considered cases hold, that set-offs such as here under consideration, are not equities or defenses within that rule. In Harrisburg Trust Co. v Shufeldt, 31 C.C.A., 190, 59 U. S. App., 532, 87 Fed., 671, it was said: "The fact that it is transferred without endorsement is sufficient to put the transferee upon inquiry, as to all equitable defenses that existed at the time of the transfer. But a set-off is not a 'defense' as that term is ordinarily used (Chandler v Drow, 6 N. H., 469, 26 Am. Dec., 704; Waterman, Set-off, §§5, 6) and is never pleadable as a defense unless it is expressly made so but statute. 'The rule that a party taking an overdue bill or note takes it subject to the equities to which the transferer is subject does not extend so far as to admit set-offs which might be available against the transferer. A set-off is not an equity and the general rule stated is qualified and restricted to those equities arising out of the bill or note transaction itself, and the transferee is not subject to a set-off which would be good against the transferer, arising out of collateral matter.' 2 Dan. Neg. Inst., 1435a; Chitty, Bills, 13th Am. Ed. 251. The set-off in this case is not connected with the note, or with the consideration for the note, or the circumstances under which it was given. It is not a defense to the note or to liability thereunder. It is a separate and independent cause of action, existing in favor of the defendant, which, by virtue of the statute only, is permitted to be set off against the plaintiff's debt for the purpose of adjusting mutual demands and avoiding unnecessary litigation."

This question is an open one in Ohio and this court is at liberty to follow the rule regarded to be the more logical one, as applied to the present case. In our judgment, the rule announced in that opinion and in many other cases may well be applied to the facts before us.

We quote again from the opinion in the same case:

Therefore, whatever may be the rule as to other defenses and equities, it may be fairly stated that the set-off that may be interposed against a negotiable promissory note transferred without endorsement, in good faith, and for value, must be a set-off which existed as a present right when the transfer was made. This is in accord with the very language of §49, N. I. L., our §1753, that 'The transfer vested in the transferee such title as the transferer had therein.'

There is a similar provision in our Negotiable Instruments Law as that referred to in the quotation, and we can not regard the right of the depositor as a set-off which existed as a "present right" when the transfer was made.

Our reasoning leads us to the conclusion that the offsets should not be allowed against owners of participation certificates, whether the transfer of the notes and mortgages to the trust fund took place before or after the notes were due.

It seems that some of the participating certificates were held by the bank at the time it went into liquidation. Under the terms of each trust, which contemplated only the deposit of notes and mortgages whose face value was equal to outstanding participating certificates, the certificates held by the bank should be allowed to fully participate in the trust fund held for the benefit of participating certificate holders, but the amount payable to the bank on such certificates will be available as assets of the bank in liquidation.

However, the amount thus coming to the bank shall be subject to set-off at the instance of depositors whose mortgages are deposited in the trust and such depositors shall be entitled to offset their deposits as of the time of the transfer of the note and mortgage, against moneys received by the bank on participation certificates retained by the bank or reacquired; and if the amount coming to such depositors in this way is not sufficient to take care of all such offsets, then such depositors shall share pro rata. Allowance, however, must

be made for dividends paid and for deposits and withdrawals by depositors between the time of such transfer and the taking over of the bank by the Superintendent of Banks.

Evidence discloses that certain money belonging to the three trusts in question was in the hands of the bank as trustee and on deposit. Money belonging to these trusts so deposited are subject to the rule in McDonald v Fulton, 124 Oh St, 97.

The Superintendent of Banks is entitled to surrender the trusts subject to the rights of the parties as herein indicated and successor trustees will be appointed to administer the trusts. Offsets or set-offs will be denied except as herein indicated as against the bank itself as to moneys coming to it on participation certificates owned and held by the bank, and general claims will be allowed for moneys belonging to the three trusts on deposit in the bank at the time of liquidation.

Decree accordingly.

RICHARDS and LLOYD, JJ, concur.