## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### LYNCHBURG FIRE INS. CO. v. WEST.

#### July 20, 1882.

1. INSURANCE COMPANIES—*Application—Parol evidence.*—General rule: *Parol* testimony is inadmissible to vary or contradict written instruments. Exceptions exist where assured is misled by declarations of insurer or his agent; where insurer insists on forfeitures of his own creation; where insurer, or agent, in preparing application or policy, fails to follow correct descriptions of assured; or where one uses his superior knowledge or influence to mislead the other as to the true import of the contract. Allowed, not to contradict writing, but to prevent its use as equitable estoppel.

2. IDEM—*Warranty—Representation.*—A stipulation on face of policy, by the assured for the absolute truth of a statement, is a warranty in the nature of a condition precedent, and on its literal truth, or fulfillment, the validity of the policy depends. A representation is a statement incidental to the contract. If false, and material to the risk, whether wilful or by mistake, the policy is avoided.

3. IDEM—*Overvaluation,* unless so excessive as to amount to proof of fraud, does not vitiate a policy, because the estimate is mere matter of opinion.

4. IDEM—*Estoppel.*—Agent's knowledge of real condition of risk is imputable to principal, and estops latter from setting up any warranty inconsistent therewith.

5. IDEM—*Construction.*—In all cases of doubt, courts lean to that interpretation of representations which shuns a forfeiture of the policy. 5 Otto, 573.

6. CASE AT BAR.—Merchant writing out application under direction of agent, tells latter he has no title, but only a title-bond, to the site of his storehouse, and has paid none of the purchase money. Application was for policy on the storehouse and its contents. Agent told merchant that, as the purchase money was not due, it was no incumbrance; and merchant stated in application that the property was unencumbered. The property was destroyed. In suit on policy, plaintiff testified as to his statement to agent. Defendant objected to the testimony, on the ground that it varied the written instruments. During trial, on motion of plain-

tiff, the court instructed the jury that "an overvaluation does not invalidate a policy, unless made with a fraudulent intent," and refused to give, on motion of defendant, an instruction that "an overvaluation, if material in amount, annuls the policy, even though made without fraudulent intent."

HELD:
1. The *parol* testimony was admissible.
2. There was no error in giving the instruction asked for by plaintiff, nor in refusing that asked for by defendant.

7. COMMON LAW PRACTICE—*Continuance.*—Circumstances which do not warrant a continuance. *Opinion*, p.

Error to judgment of circuit court of Patrick county, in action of *assumpsit* by John T. West against The Lynchburg Fire Insurance Company, on a policy effected on a storehouse and contents. Verdict and judgment for plaintiff. Defendant obtained writ of error and *supersedeas.*

The opinion states the case.

*John E. Penn,* for appellant.

*J. L. Tompkins* and *A. A. Phlegar,* for appellee.

STAPLES, J., delivered the opinion of the court.

An action of *assumpsit* upon a fire insurance policy was brought by John T. West against The Lynchburg Fire Insurance Company in the circuit court of Patrick county. Upon the calling of the cause for trial in the court below, the defendants moved for a continuance upon two grounds.

First, the absence of certain bills and invoices, which were alleged to be material to the defence, and without which the defendants could not go safely into the trial. Secondly, the absence of a witness, who had not been summoned, but of whose materiality the defendants were not informed until the day of trial.

With respect to the first ground it is sufficient to say that the bills and invoices were in possession of the defendants,

and had been in their possession for six months previous
to the trial. If, as stated in the affidavit of the company's
agent, they had been mislaid or overlooked, it was owing
to the carelessness or negligence of the defendants or their
agents. In the exercise of ordinary diligence they ought
to have remembered that the papers in question had been
sent to them by the plaintiff, and they ought to have made
diligent search for them if they desired to use them as
evidence on the trial.

With reference to the second ground relied on for a con-
tinuance, it is to be observed the affidavit does not state
that the supposed witness is material, but that the affiant
had that day for the first time heard facts *which may make*
the witness important. Nor is it stated that the same facts
could not be proved by other witnesses, or that the defend-
ants could not safely go to trial without the testimony.
For aught that appears to the contrary, other witnesses in
attendance might have proved the same facts. Whether
the absent witness would turn out to be material, depended
upon some occurrence or contingency not then disclosed. I
am of opinion that the court properly overruled the motion
for a continuance.

During the progress of the trial, the plaintiff was intro-
duced as a witness, and testified that the company's agent
requested him to insure his storehouse and stock of goods
in defendant's company; that he made out two applica-
tions under the directions of the agent; that before insur-
ing, he told the agent that he had no title to the land upon
which the storehouse was situated, but a title bond, and
that he had paid no part of the purchase money. The
agent told him as the money was not due it was no incum-
brance on the property, and he therefore wrote in the ap-
plication that the property was not encumbered. He then
paid the premiums, and the policies were sent to him a
short time thereafter. The defendant moved to exclude

this evidence, upon the ground that the plaintiff, in his application, had affirmed there was no encumbrance upon the property; that this affirmation constituted a warranty, and if not a warranty, it was a representation material to the risk, and, being incorporated in the policy, could not be contradicted or varied by *parol* proof of prior or contemporaneous conversations between the plaintiff and defendant's agent.

The court below refused to exclude the evidence, and we are now to inquire whether this ruling was proper. This question has been the subject of discussion by this court in several cases. In *Southern Mutual Insurance Company* v. *Yates*, 28 Gratt. 585, the judge, who delivered the opinion of the court, after stating the general rule that parol testimony is inadmissible to vary or contradict a written instrument, and that the latter is generally regarded as the best, if not the sole, repository of the contract, said that the exceptions to this rule, so far as insurance policies are concerned, will be found in those cases in which the assured is misled by assurances, or declarations of the insurer, or his agent, or where the insurer seeks to take advantage of a forfeiture of his own creation, or where the insured has given a correct description of the property, and that description has not been followed by the insurer or his agents in preparing the policy, or where the parties stand upon unequal grounds, and one of them uses his superior knowledge, or his influence, to mislead the other as to the true import of the contract. In such cases the oral evidence is not offered to contradict the writing, but to show that the representation, as it is written, ought not to be used against the party upon the ground of an equitable estoppel. The same rule was laid down in *Georgia Home Insurance Company* v. *Kinnier's Adm'x*, 28 Gratt. 88, and in *Manhattan Fire Insurance Company* v. *Weill and Ullman*, 28 Gratt. 389, and is now the established doctrine of the courts.

"The principle," says the supreme court of the United States, "is that where one party has, by his representations or his conduct, induced the other party to a transaction to give him an advantage which it would be against equity and conscience for him to assert, he will not in a court of justice be permitted to avail himself of that advantage." *Union Mutual Insurance Company* v. *Wilkinson*, 13 Wallace, 222; May on Insurance, § 499, and cases cited in note 1; Wood on Insurance, p. 680; § 403.

And in all this class of cases, it has been further held that where the agent, filling up the application is clothed with real or apparent authority to make a contract of insurance, the agent's knowledge of the real condition and situation of the risk is imputable to the principal and estops the latter from setting up any warranty inconsistent therewith. Wood on Fire Insurance, § 386, 402, and cases cited in note; May on Insurance, § 502, § 140; Wood, § 403, and notes.

The learned counsel for the defendants insists that the agent in this case was one of limited and special powers, and that the company cannot be bound by any opinions or representations on his part, the effect of which is to annul clearly defined provisions of the contract of insurance.

The evidence in this record with respect to the powers of the agent shows that the principal office of the company was in the city of Lynchburg; that the agent who effected the insurance resided at Floyd Courthouse, about one hundred miles distant, whilst the plaintiff's property was located in the county of Patrick. The papers and exhibits connected with the policy show that the agent was clothed with such powers as are usually exercised by the local agents of insurance companies, whose business it is to solicit insurance, fill up applications, propound interrogations, obtain answers, make recommendations, furnish all needful information with respect to the nature and character of

the risk, and.agree upon the terms of the insurance, subject only to the ratification of the company. One of these exhibits purports to be the agent's survey, in which, in answer to a question propounded by his principal, he states that "the property is not mortgaged or otherwise encumbered," and this statement is made with full knowledge of all the facts communicated to him by the plaintiff. If, therefore, the defendants were misled, it was by their own agent and not by the plaintiff. The latter honestly gave the agent all the information that was required of him; he relied upon the agent to see that the business was correctly done, according to the requirements of the company. Called upon to make answers to certain interrogations, he had the right to presume that the agent was competent to understand their meaning and effect as well as the meaning and effect of the provisions of the policy bearing upon the disclosures so made. The defendants ought not now to be heard to say that the agent of their own selection had exceeded his powers, and that he had not communicated to them the facts made known to him by the plaintiff. This is manifestly so, unless it could be shown that special limitations upon the powers of the agent were known to the plaintiff, or plainly appeared from the nature of his employment.

In *Union Mutual Insurance Company* v. *Wilkinson*, 13 Wallace, 222, the supreme court of the United States said, "the party who is induced by these agents to take out a policy rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect the insurance as the full and complete representative of the company in all that is said or done in making the contract. And he has the right so to regard him. See May on Ins. § 144, p. 164. And in *Malleable Iron Works* v. *Phœnix Insurance Company*, 25 Connecticut, 465, it was held that an agent of an insurance

company, authorized to procure applications for insurance, and furnished by the company with printed blanks therefor, containing interrogations, to be answered by the applicant, with regard to the condition of the property to be insured, has, as incidental to such power, authority to make all necessary explanations of the meaning and effect of the terms employed by the company in their interrogations, and to agree with the applicant as to the terms which he shall employ to express the facts stated by him in answer to the interrogations." And accordingly the rule seems to be settled that where the mistake is the fault of the agent it may be shown, and when established, the insurer is bound to respond upon the contract actually made, and this extends not merely to mistakes in the policy, but also to mistakes arising from ignorance of the agent or his misconception of the legal effect of the condition of the policy. See Wood on Insurance, §§ 384 to 407, inclusive. If these principles be sound, it is very clear that the circuit court did not err in receiving the evidence which has been heretofore stated.

The settlement of this point is an adjudication also of the question presented in the plaintiff's first instruction to the jury. That instruction is based upon the evidence in question, and if the court did not err in receiving the evidence, it did not err in giving the instruction.

We come next to the plaintiff's third instruction. It is as follows:

" The court instructs the jury that if they believe from the evidence that the plaintiff, in fixing the value of the property, real and personal, insured at the time he made his application, fixed the amount by his opinion of its value, and had no intention to defraud the company, that the policies are not void or forfeited, though they may believe from the evidence that the plaintiff fixed the value too high."

This instruction was given by the court.

The defendant then asked the court to give the following: "If the jury believe from the evidence that John T. West made an overvaluation in the application for the insurance of the storehouse, and that such overvaluation was material in amount, then they must find for the defendant on the policy in reference to the said storehouse."

The plaintiff's instruction asserts the proposition that an overvaluation does not invalidate the policy unless made with a fraudulent intent. On the other hand, the proposition asserted in the defendant's instruction is, that an overvaluation, if material in amount, annuls the policy, even though made without a fraudulent intent. It is not very certain whether the draftsman of the instruction meant to affirm that the statement of the value of the property constituted a warranty, or whether such statement was a mere representation which would invalidate the contract of insurance if the overvaluation should be material. The difference between them is radical and well understood.

A warranty is a stipulation inserted in a writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. By a warranty the assured stipulates for the absolute truth of the statement made, which is in the nature of a condition precedent. A representation is a statement incidental to the contract. If false, and material to the risk, the policy is avoided, whether the misrepresentation be wilful or made in good faith through a mistake. It is well settled that a mere misrepresentation of the value of the property does not vitiate the policy, unless the overvaluation be gross and clear, such as is, or must be, presumed to be known to be such by the insured, and not known to the insurer, and therefore false and fraudulent. May on Insurance, § 373; *Franklin Insurance Company* v. *Vaughan*, 2 Otto, 516.

The overvaluation must be intentional and fraudulent,

and not a fair expression of the honest judgment of the insured, and the fact that the property is considerably overvalued does not of itself establish such fraud on the part of the assured as avoids the policy. Wood on Insurance, p. 427.

I do not mean to assert a representation of value cannot in any case constitute a warranty. Doubtless it may be so made by the express contract of the parties. The courts, however, are almost universally indisposed so to construe policies of insurance. The value of the property, especially if real property, is always to a considerable extent a matter of opinion and judgment, about which men differ widely and honestly. To hold that the insured forfeits his policy because he may have innocently placed an overvaluation upon his buildings or upon his goods, is to lay down a rule which is pregnant with mischief and abhorrent to every right-thinking mind. The value of property generally is only to be ascertained by the opinion and judgment of witnesses, and if the witnesses differ with the assured, it would not always prove that his estimate is erroneous, unless, indeed, the overvaluation is so excessive as to amount to proof of fraud. It seems to me, that whenever the application is incorporated in the policy as a warranty, the warranty should be regarded as relating only to matters of which the assured had, or should be presumed to have had, some distinct, definite knowledge, and not to such matters as depend wholly upon opinion and judgment. Wood on Insurance, §§ 426–7.

Let it be conceded, however, that in this case the application is a part of the policy, and that it is by the policy made a warranty. If such it be, all its terms and provisions must be considered as incorporated in and inserted at large in the policy. Now, looking at the application, we find that the assured, after answering the various interrogations proposed to him with reference to the risk, has sub-

scribed the following covenant—that is to say, "his answers constitute a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property to be insured, so far as the same are known to him and are material to the risk." This is not the language of a warranty, but a mere representation of facts and circumstances, so far as they are known to the applicant. He is not to be considered as absolutely warranting the truth of his statement, but that he held himself responsible for a full and true exposition, so far as the facts and circumstances are known to him. It was in effect a covenant of good faith—a covenant that all the company required was a frank disclosure of all such material facts as were within the knowledge of the applicant. Now, if by the policy the application constitutes a warranty, an entirely different effect is given to the statements of the assured from what is expressly stipulated in the application itself. This would be to impute to the company a purpose, by studied intricacy of language or an ingenious framing of the policy, to entrap the assured into incurring obligations which, perhaps, he had no thought of assuming. But let us look at the policy itself. It declares that "if an application is referred to in this policy, such application shall be considered a warranty," and this is the only reference to the application in the policy. This provision is succeeded immediately by the following stipulations: "And any false representation by the assured of the condition, situation, or occupancy of the property, or any omission to make known every fact material to the risk or an over valuation, or any misrepresentation, either in a written application or otherwise, &c., &c., shall avoid the policy."

Now, it is obvious that these stipulations refer not to innocent or immaterial mistakes by the assured, but to wilful and material misrepresentations. Why were they in-

serted in the policy, if the representations of the assured constitute a warranty? Upon the supposition that such representations are warranties, the stipulations themselves are not only superfluous, but they are mischievous and calculated to mislead. At all events, if the construction of defendant's counsel be correct, the policy is contradictory in its terms; for in one part the insured is made to say that he warrants the truth of every representation, and in another he is required to give a true exposition, so far as the facts and circumstances are known to him.

In every such case, the court leans to that construction which avoids a forfeiture and preserves the rights of the assured. Upon this point we have an express authority in a late case decided by the supreme court of the United States—*National Bank* v. *Insurance Company*, 5 Otto, 673. In that case the application contained a covenant similar to the one here, and many of the provisions of the policy were substantially the same as in this case. Mr. Justice Harland, in delivering the opinion of the court, said that two constructions of the contract might be suggested.

According to one, the assured would be held as only warranting that he had stated all material facts in regard to the condition, situation, value and risk of the property, so far as they were known to him. And this was, perhaps, the construction most consistent with the liberal import of the terms used in the application and the policy.

According to the other, the warranty is to be regarded as relating only to matters of which the assured had, or should be presumed to have had, distinct, definite knowledge, and not to such matters as values which depend upon mere opinion or probabilities.

But without adopting either of these constructions, the learned judge rested his opinion upon the broad ground that when a policy of insurance contains contradictory provisions, or has been so framed as to leave room for con-

struction rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court leans against that construction which imposes upon the assured the obligation of a warranty. It was accordingly held in that case that notwithstanding the assured had over estimated the value of his property, the policy would not on that account be vitiated, unless it could be shown that the estimate was intentionally excessive and therefore fraudulent. The instruction given by the circuit court is in conformity with these principles and the current of authorities elsewhere, and is a correct statement of the law governing in this case. It is unnecessary to discuss the motion for a new trial. The evidence before the jury clearly justifies the verdict. There was no proof of any fraud on the part of the plaintiff; indeed, the verdict negatives its existence. The testimony with regard to the value of the property was conflicting, and, as fixed by the jury, was not excessive, according to the opinion of several witnesses.

Upon the whole case, there is no error in the judgment, and the same must be affirmed.

JUDGMENT AFFIRMED.