Syllabus.

# Richmond.

EASLEY v. VALLEY MUTUAL LIFE ASSOCIATION.

MARCH 14, 1895.

1. MUTUAL INSURANCE—*Assessment*—*Evidence.*—In an action upon a policy of insurance in a mutual life insurance company, the by-laws of which company provide " that no question shall be raised as to the right to make, or necessity of, any mortality assessment made under any certificate of membership, except in the life-time of the member, and within six months from the time when same was made," it is not competent for the plaintiff, after the death of the member, to offer evidence for the purpose of raising such question.

2. MUTUAL INSURANCE—*Forfeiture — Waiver—Estoppel—Indulgence.*—In an action on a policy in a mutual life insurance company, which, according to its terms, has become forfeited, by reason of failure to pay assessments, if the plaintiff relies upon a waiver of such forfeiture, or upon an estoppel to assert it, it is not sufficient, in order to overcome such forfeiture, to show former indulgence to the insured, when it appears that he knew when his assessments fell due that his policy stood forfeited for failure to pay, and that his restoration to membership was granted as a favor to him, upon a proper certificate of unimpaired health ; nor is it sufficient to show former indulgence to other members of which plaintiff's intestate had no knowledge.

3. INSTRUCTIONS—*Abstract Legal Propositions.*—Instructions which announce mere abstract propositions of law, however correctly, should not be given when there is no evidence in the case upon which such instructions could be predicated.

4. MUTUAL INSURANCE POLICY—*Forfeiture— Waiver—Instructions—Harmless Error.*—Provisions inserted in an insurance policy, in pursuance of the charter and by-laws of the company, which work a forfeiture of the policy upon certain conditions, are so inserted for the benefit of the company, and, it seems, may be waived by the company ; and though an instruction was given, which denies the power of the company to make such waiver, yet, if the verdict of the jury, upon the facts, appears to

be plainly right, this court will not reverse the judgment of the lower court, on account of such erroneous instruction, as the plaintiff was not prejudiced thereby.

Error to a judgment of the Circuit Court of Augusta county rendered May 25, 1891, in an action of covenant wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*John N. Opie*, and *Martin Williams*, for the plaintiff in error.

*Elder & Elder*, and *Geo. M. Cochran*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

It appears from the record that George W. Easley on the 28th of May, 1885, received a certificate of membership in the Valley Mutual Life Association of Virginia, by which that corporation, in consideration of the payment of the sum of $24, at the date of the certificate, and the sum of $15, annually thereafter for three years, and after the expiration of three years the annual payment of $6 per year, together with such assessments as might be made against him on account of death of members from time to time occurring, known as mortality assessments, undertook to pay to Minnie C. Easley, the wife of George W. Easley, at the home office of the association at Staunton, the sum of $3,000, within 90 days after notice and the proofs required of the death of the said George W. Easley. This certificate of membership was issued and accepted upon certain conditions set out in the policy, among others, that "if any dues or mortality assessments on this

policy shall not be paid within 30 days from date of notice in person, or from date of mailing same to his address, the consideration of this contract shall be deemed to have failed, the association shall be released from all liability, and all payments heretofore made shall be forfeited.'' This provision of the policy is in accordance with the 7th clause of the charter of the association, and is the only provision of the charter which need be specifically mentioned.

By the 7th clause of the policy it is provided ''that no person except the president, or secretary of the association, is authorized to make, alter, or discharge the contracts, or to waive forfeitures,'' and this provision of the policy is in accordance with Article 20 of the by-laws.

Geo. W. Easley died in January, 1890, and his widow, the beneficiary under the policy, demanded of the Valley Mutual Life Association the amount of insurance upon his life, which was refused; and thereupon suit was instituted in the Circuit Court of Augusta county. It appears that at the time of his death there remained unpaid, mortality assessment No. 72, for $7.11, which fell due on the 31st day of October, 1889, and notice of which was mailed to the plaintiff's intestate at Pearisburg, Giles county, Va., the postoffice and usual place of abode of the deceased.

The defendant claims that, by virtue of the provisions in the charter, the by-laws, and the policy, all benefits which would otherwise have vested in the beneficiary were forfeited; while the plaintiff, on her part, claims that the forfeiture was waived by the defendant company, by its general course of dealing with its policy holders, and especially with the plaintiff's intestate. The acts which are relied upon to prove a waiver, or to create an estoppel, which would debar the defendant from setting up the forfeiture are: that the defendant company at various times extended credit to the plaintiff's intestate; that it had waived forfeitures which had thereto-

fore accrued against him for the failure to pay other assessments in his life time; and that by this course of dealing with him, and with others, he had been lulled into false security; that he had been induced to rely upon these continued acts of indulgence and forbearance; that the defendant had, at all times, been able to preserve his rights in this association, and that it would be a hardship and injustice to enforce the forfeiture against his widow under such circumstances.

The first point presented in this record is as to the ruling of the Circuit Court excluding a question put to Asher Ayers, one of the defendant's witnesses, by counsel for plaintiff, upon cross-examination.

"Did you, upon the advice of Judge Staples, settle the Pritchard & Kingren cases with me upon which a deduction of $500 was made, and was not $1,250 deducted from Mrs. Warren's policy on the life of her husband, and did not the company assess for the full amount?" This was properly ruled out. The by-laws of the company expressly provide "that no question shall be raised as to the right to make, or necessity of, any mortality assessment made under any certificate of membership except in the lifetime of the member, and within 6 months from the time when same was made." See also *Crossman* v. *Massachusetts Ass.*, 143 Mass. 435. It was also inadmissible because it does not appear when the transaction occurred to which the question alludes, and it might, therefore, have taken place before assessment 72 became due, or it might have had relation to some subsequent assessment. In any view of it, therefore, the question was too indefinite, vague, and uncertain to be admitted, and was therefore properly excluded.

I will now consider the only evidence which I have been able to discover in the record of the dealings between ·the defendant and the plaintiff's intestate having the remotest bearing upon the propositions sought to be maintained, or the

slightest tendency to prove any such waiver or estoppel as is here invoked. I refer in the first place to two assessments mentioned in the letter of Easley dated February 8, 1886, in which he says:

"I have received notice of my February assessment on policy No. 9830. On looking over my papers I have no receipt for last assessment, nor is the check I drew for same charged to me at bank. Will it be all right to send in check for last assessment and let the other take chances to turn up; or had I better send amount of both assessments, and if the other check comes to light let that then be returned? I wish to be on the safe side."

Very truly,

GEO. W. EASLEY."

To that letter the company replied, advising him to send check for both assessments, and in accordance therewith on the 27th of February, 1886, he again wrote to the company as follows:

"I enclose check for $9.48 to cover two double assessments. If the other check ever turns up it can go to my credit. It has never been sent to bank."

It appears, therefore, that on the books of the company Easley was in default for the first of the two assessments mentioned, while in point of fact he had mailed a check for the amount due. This, of course, was an accident or mistake for which he was in no wise responsible, and from the consequences of which the company was bound to hold him exonerated. I do not see that that at all tends to prove the indulgence upon which the plaintiff in this suit relies to overcome the forfeiture, or has any tendency to establish the existence of a credit system between the defendant and the plaintiff's intestate, in respect to the payments of assessments due the company.

The next instance of failure to pay promptly occurred with

respect to annual No. 1, for $15, due the latter part of May, 1886. On the 14th of June, 1886, Charles Grattan, secretary of the company, wrote to Mr. Easley as follows:

"Mr. Geo. W. Easley,

        Pearisburg, Giles.Co., Va.

  Dear Sir:

     You have failed to remit $15, the amount due for annual No. 1, on your policy No. 9,830. Please remit by return mail as the payment is past due.

              Yours truly,

                    CHARLES GRATTAN."

To this Judge Easley replied by letter dated 24th July, 1886, as follows:

"Mr. Charles Grattan, Esq.,

  Dear Sir:

     I have just returned after an extended trip, and have your postal of the 10th inst. I had no idea of dropping my policy in the Valley Mutual, and if not too late, wish it reinstated. My health is first-rate, and has been. I enclose check for $19.74, which will straighten me, I believe. I will try and not be guilty of such a piece of negligence again."

The only other instance of failure to pay assessments when due, occurred in June, 1889. It appears that Mr. Easley had been absent from home, and an annual, amounting to $6, falling due May 28 of that year, was not paid. On June 14, 1889, the secretary of the defendant company addressed to Geo. W. Easley the following notice:

"You have failed to remit $6, the amount due May 28th for annual No. —, on your policy No. 9,830, and by the terms of your policy the same is forfeited. If the amount due is paid by the 25th inst., your policy will be reinstated. This privilege is not to be taken as a precedent, or a right, but as a favor to you, on the understanding that your health

is unimpaired; and until the amount is received, you stand uninsured.   Sign and date the following certificate and return this card with remittance.

W. B. McChesney,

Sercetary.

I hereby certify that I am in good health and insurable condition.''

That certificate was signed by G. W. Easley, 24th of June, 1889.   Accompanying the return of this certificate is a letter from Mr. Easley dated Pearisburg, Va., 24th June, 1889, to W. B. McChesney, secretary:

''Dear Sir:

I don't know how I ever slipped up on my annual for 1889.   Fortunately my health is excellent, and I hope I have not lost anything.   I wish I could have my annual made payable at the same time I have to pay an assessment.   Can't you move it backward cr forward so as to make it hit?   I am perfectly willing to change it to 1st May.   I enclose health certificate and check $13, to cover also assessment due 1st of July.

Very truly,

·G. W. Easley.''

Now these letters establish several propositions.   They show that he knew the mortality assessments fell due on the first of every alternate month; that he knew his policy stood forfeited for his failure to pay his annual; and he knew that it was necèssary for him to sign a health certificate in order to be reinstated.   There is here no suggestion of waiver or estoppel, but it appears that he understood fully that his restoration to his relations with the company was a privilege granted as a favor to him, and granted only upon the understanding that his health was still unimpaired.   Other assessments appear to have been paid promptly up to the one due

October 31, 1889.    There is also some evidence in the record
that, with respect to certain policy holders, indulgence had
been extended upon their annuals and assessments; but it also
appears that they were members of the society who lived in
and about Staunton, who were known to the officers, who
understood that while their assessments were unpaid, they
stood uninsured; and, with respect to the greater part of
them, the secretary had made himself personally responsible
to the company by carrying assessments for them, and had
thereby lost several hundred dollars.    See testimony of Mr.
Cooke.    It does not appear that the indulgence extended to
others. could have influenced the action of the plaintiff's intes-
tate, because there is no evidence tending to prove knowledge
on his part of any such acts upon the part of the company.

This being all the evidence upon this point, plaintiff asked
the court for nine instructions, which I do not think it neces-
sary to consider in detail.    They all present the idea that the
defendant company could, expressly or by implication, waive
a forfeiture occurring by reason of nonpayment of annuals,
or assessments, on or before the appointed day, or by its acts be
estopped from setting up the forfeiture; that the provision of
the charter, of the by-laws, and of the policy, declaring for-
feiture of policies for the reasons therein respectively set
forth, were intended for the benefit of the company, and
could be by its acts or by the acts of its officers effectually
waived; and that courts will not allow corporations, any
more than individuals, to take advantage of their own wrong
by accepting the benefits of a particular line of conduct and
then repudiating the obligation which that conduct entails.

The defendant, on the other hand, asked the court to in-
struct the jury that, according to the true construction of the
7th clause of the charter, the failure to pay, or to tender pay-
ment, on or before the 31st day of October, 1889, of the
assessment then due, caused a forfeiture under the terms of

the 7th clause, which it was not in the power of the officers of the defendant association to prevent, or waive, whatever may have been their power to have reinsured the life of George W. Easley. As abstract propositions of law the instructions asked for by the plaintiff could, perhaps, be maintained. In some of them the law is, without a doubt, correctly stated; and, that being the case, it would be the duty of this court to reverse the judgment of the court below, and award a new trial, were there any evidence in the record upon which those instructions could be predicated. But it seems to us that there is no evidence whatsoever proving, or tending to prove, that there was any waiver, expressed or implied, or any conduct on the part of the defendant company from which such waiver could be inferred, and to have given any of the instructions asked for by the plaintiff would have directly tended to mislead the jury, and they were therefore properly refused. Nor can we give our assent to the law, as set out in the instruction granted by the court for the defendant. We think that this provision in the charter, by-laws, and policies, was inserted for the benefit of the company; and, such being the case, we are not prepared to say that, where there is evidence proving or tending to prove an intention to waive, it is not within the power of the company to do so. On the contrary, the general current of authority seems to be that it may. See *Georgia Home Ins. Co.* v. *Kinnier*, 28 Gratt. 88; *Insurance Company* v. *Norton*, 96 U. S. 234; *Phœnix Insurance Company*, v. *Doster*, 106 U. S. 30; *Insurance Co.* v. *Eggleston*, 96 U. S. 572; and Niblack on Insurance, section 298. But, inasmuch as the plaintiff's case is entirely unsupported by testimony, it would have been within the province of the court upon the motion of the defendant to exclude all that was said by witnesses upon this branch of the case from the consideration of the jury. In any event, had the jury found a verdict for the plaintiff, it would have

been the duty of the court to set it aside, and grant a new trial.

Conceding, therefore, that it was error to have given the instruction asked for by the defendant, the plaintiff was not prejudiced thereby, and it is not a cause for reversal; the court being of opinion that the verdict of the jury upon the facts was plainly right. The judgment must therefore be affirmed. *Moore* v. *City of Richmond*, 85 Va. 558, and cases there cited.

AFFIRMED.