# Richmond.

## GEORGIA HOME INSURANCE CO. v. GOODE & CO.

### APRIL 7, 1898.

Absent, Cardwell, J.

1. DEMURRER TO EVIDENCE—*Existence of Partnership Between Plaintiffs—Conflicting Evidence.*—Upon a demurrer to the evidence by the defendant in an action brought by two parties suing as partners, where the evidence as to whether they were partners or not is conflicting, the evidence of the defendant will be rejected, and the parties held to be partners in accordance with evidence of the plaintiffs.

2. DAMAGES—*Verdict in Excess of Amount Claimed in Declaration—Interest.*—Greater damages cannot be awarded than are claimed in the declaration, but this restriction is confined to the principal of the recovery, and does not affect the interest that may be allowed thereon.

3. INSURANCE—*Proof of Loss—Objections to—When to be Made—Specific Objections—Waiver of Others.*—When there is any valid objection to a proof of loss, it should be communicated to the insured within a reasonable time, or the objection will be deemed to have been waived. And where specific objections have been made and the assured has expended time and expense in removing them, the insurer will be deemed to have waived all other objections, and will not be allowed to assert them on the trial.

4. INSURANCE—*Proof of Loss—Requisites of—Waiver.*—A substantial compliance with the requirements of the policy is all that is required in a proof of loss. When such proof has been furnished, and the demands of the company, as far as practicable, have been complied with, and the company has failed to state other objejections, or to answer enquiries as to its intention to pay the amount of the loss, its conduct will be deemed to be a waiver of any right to require further proof.

5. INSURANCE—*Encumbrance on Property—Disclosure to Agent—Estoppel.*—Where a deed of trust on personal property insured is mentioned to the agent of an insurance company who solicits the

insurance, at the time of the application, and he advises the assured that the amount is too small to be noted, and, by his advice, the assured fills in his answer "No" to the question "Is the property mortgaged?" in the written application, and there is no express limitation in the application on the powers of the agent, and the assured is ignorant of any such limitations, the company is estopped to set up the encumbrance as a defence to an action on the policy.

6. INSURANCE—*Encumbrance—Forfeiture—Proof of Loss—Waiver.*—The forfeiture imposed by an insurance policy on account of an encumbrance on the property insured will be deemed to have been waived where it appears that the existence of the encumbrance was well known to the insurance company when it received the proof of loss, and it made no allusion to the lien, and did not claim that there was any ground of forfeiture of the policy, but objected to the proof of loss on other grounds which required some trouble and expense to remove.

Error to a judgment of the Circuit Court of Fauquier county, rendered September 12, 1896, in an action of *assumpsit* wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Eppa Hunton, Jr.,* for the plaintiff in error.

*Jeffries & White,* for the defendant in error.

RIELY, J. delivered the opinion of the court.

This is the sequel of the case of *Goode & Co.* v. *Georgia Home Ins. Co.,* reported in 92 Va. 392, and comes before us upon a writ of error to the judgment of the Circuit Court rendered upon a demurrer to the evidence.

The policy of insurance was issued to W. B. Goode & Co., and the suit was instituted in the name of W. B. Goode and A. M. Wright, partners, trading under the firm name of W. B.

Goode & Co.   The objection was made that A. M. Wright was not proved to be a partner at the time the policy was issued, and that there was consequently a variance between the allegations and the proof.   Whether or not he was a partner was, under the circumstances of the case, wholly a question of fact. The testimony for the plaintiffs was positive that he was a partner at that time, and while there was much testimony in behalf of the defendant company tending to prove that he was not then a partner, yet being in conflict with that for the plaintiff, it must, under the principles of a demurrer to the evidence, be disregarded.   The court did not err in holding that there was no variance between the declaration and proof in that respect.

The damages laid in the declaration were $2,000.   The verdict and judgment were for $1,660, with interest thereon from July 19, 1891, making the aggregate amount of the recovery at the time of the judgment $2,174, which was in excess of the damages claimed in the declaration.   This was not error.   Greater *damages* cannot be recovered than are declared for and laid in the conclusion of the declaration, but the restriction is confined to the amount of *damages*—the principal of the recovery, and does not affect the interest that may be allowed thereon by the jury.   *Cahill* v. *Pintoney*, 4 Mun. 371.

It was also objected that satisfactory proofs of loss were not furnished as required by the terms of the policy.

The fire occurred on the night of April 16, 1891.   The general agents of the company were notified on the next day of the loss, and in response to the notice, the company's special agent and adjuster R. P. Spencer, came and fully investigated the matter.   The insured exhibited to him the inventory that had recently been taken of the stock of goods, amounting to $3,527.05, their books, and all evidences then in their possession. They also informed him of a deed of trust on the goods, which was given by W. B. Goode to secure the sum of $390 to Isaac R. Newman, and told him of the conversation had with the soliciting agent in regard to the lien at the time that he took the

application for the insurance. Not hearing from the company after the visit of the adjuster, they wrote to the company on April 28 in regard to the matter, and received in reply a letter from its secretary, dated May 5, in which he acknowledged the receipt of their letter, and stated that he had also received "Mr. Spencer's report of his investigation," but referred them to the requirements of their policy in case of loss, and enclosed a blank form of proof of loss for their use. This was promptly filled out and returned to the company, but its receipt was not acknowledged until June 15, when Mr. Spencer wrote and informed them that the proof of loss was unsatisfactory because (1) it omitted to state the occupancy of the building in which the goods were burned, (2) did not give the names of the parties insured under the policy, and (3) did not give copy of policy of other insurance. He also informed them that the company demanded the original or properly certified duplicate invoices of the goods destroyed, and concluded his letter with the assurance that when these "defects" were cured, the company would "give prompt attention to the alleged claim."

Where there is any valid objection to a proof of loss, it should be communicated to the insured within a reasonable time, or the objection will be deemed to have been waived. There was much delay in doing so in the present case. Nor was the proof of loss justly obnoxious to the objections made to it on the part of the company. In it were stated the names of the parties insured. The name of the company in which they had other insurance, the amount thereof, the date and term of the policy, and rate of premium, together with the endorsements on the policy, were also stated. More than this could not well have been given in the space set apart for this purpose in the blank form for proof of loss furnished to them by the company. Certainly, a copy of the policy, with its innumerable stipulations, forfeitures and provisions could not have been inserted; and, moreover, the form did not call for it. It is true that the specific question as to the occupancy of the building was not ex-

pressly answered, yet when the whole proof is considered, it satisfactorily appears that the building could not have been in the occupancy of any other person than the insured, and that the omission to answer specifically the question was merely technical. And, further, it does not appear in any state of the case that the occupancy of the building was a material matter, or was relied upon for any purpose whatever. The proof of loss was, in our opinion, a substantial compliance with the requirements of the policy. This is all that can be reasonably exacted, and is all that the law requires. *Home Ins. Co.* v. *Cohen,* 20 Gratt. 312.

It appeared in evidence that the original invoices were destroyed, but, on demand of the company the insured went to work and after diligent effort obtained duplicate invoices as far as it was practicable to do so; and when they had obtained them, they wrote and so informed the company. It made no reply and took no notice of their letter. They then placed their case in the hands of attorneys, who, in an urgent letter, courted a further investigation by the company of the claim, if not satisfied of its validity and courteously asked that they should at least be informed of the intention of the company as to its payment. Their communication was also allowed to go unanswered. The conduct of the company was a waiver of any right to require the insured to do more in regard to the invoices than they had done.

The real defence to the claim of the plaintiffs was founded upon an encumbrance subsisting on the property at the time of the insurance, which, it was alleged, was not disclosed to the company.

In the application for insurance in reply to the question: "Is the property mortgaged?" the answer "No" was given. There was in fact the deed of trust thereon executed by W. B. Goode to secure a debt of $390 to Isaac R. Newman, which has been already adverted to. It was contended that the answer was a warranty that the property was free from encumbrance, and, being untrue, avoided the policy.

The testimony, considered upon the principles of a demurrer to the evidence, proves that the lien of the deed of trust was made known to Robert E. Harris, the employee of Thomas B. Harris & Son, who were general agents of the company, at the time he solicited the insurance and the application therefor was made out upon which the policy was issued, and that the answer "No" was written at his dictation, he remarking that the lien was too small to be noted, and the insured, having but little experience in insurance matters, were not aware that a lien upon the stock of goods would affect in any way the issuing of the policy of insurance.

Upon the former appeal, the important question was whether Robert E. Harris, who solicited the insurance, was such an agent as that his knowledge was imputable to the company. The question was decided in the affirmative, and evidence of what passed between the insured and the agent in regard to the lien at the time that the application for the insurance was filled up and signed was held to be admissible.

It was contended by the insured that the existence of the lien having been fully made known to the soliciting agent, and his knowledge being imputable to the company, it was estopped to interpose the fact of the encumbrance as a defence against its liability upon the policy. Authorities to sustain the proposition are abundant. *Mutual Fire Ins. Co.* v. *Ward*, 95 Va. 231; *Farmers & Mechanics Benev. Fire Ass.* v. *Williams*, 95 Va. 248; *Georgia Home Ins. Co.* v. *Kinnier*, 28 Gratt. 88; *Manhattan Fire Ins. Co.* v. *Weill & Ullman*, Id. 389; *Southern Mutual Ins. Co.* v. *Yates*, Id. 585; *Carpenter* v. *Germania Ins. Co.*, 135 N. Y. 298; *Forward* v. *C. Ins. Co.*, 142 N. Y. 382; *Planters Ins. Co.* v. *Myers*, 55 Miss. 479; I Wood on Ins., sec. 90, and Ostrander on Fire Insurance (2d ed.), secs. 350 and 356.

In *Lynchburg Fire Ins. Co.* v. *West*, 76 Va. 575, the insured testified that he informed the agent who negotiated the insurance that he had no title to the land, but only a title bond, and had paid no part of the purchase money; that the agent told

him that as the money was not due it was no encumbrance, and that he therefore wrote in the application that the property was not encumbered. The defendant moved to exclude this evidence upon the ground that the insured, in his application, had affirmed that there was no encumbrance upon the property, but the court refused to do so. Upon an appeal to this court, the ruling was affirmed, and the evidence held to be admissible, not for the purpose of contradicting the application, but to show that the answer, as it was written, ought not to be used against the insured upon the ground of an equitable estoppel.

In that case the vendor's lien for the whole of the purchase money encumbered the title. Upon the explanation of the agent that because the money was not due it was no encumbrance, the applicant wrote in the application that there was no encumbrance. This court held that the admission of evidence to show this was proper as tending to prove an equitable estoppel. It follows that if the evidence established the fact, the company was estopped from relying on the untruthfulness of the answer as a ground of forfeiture of the policy.

In this case, there was a deed of trust on the stock of goods for $390. The agent, when the application was being filled up, was informed of the lien, but stated that the amount was too small to be noted, and under the influence of his explanation and superior knowledge, and at his dictation, it was stated in the application that there was no encumbrance. This fact being proved, it equally created an estoppel in this case, and the company could not rely on the existence of the deed of trust as a ground of forfeiture.

The principle contended for by the defendants in error was distinctly enunciated by Judge Staples in discussing and approving the instructions given in *Southern Mutual Ins. Co.* v. *Yates, supra.*

While it was contended for the plaintiff in error that the agent had no power to waive any condition of the policy or ground of forfeiture, it was not pretended that there was any

express limitation in the application on the powers of the agent, but it was earnestly insisted that the questions propounded in the application were in themselves, from their nature, notice to the insured of the limited powers of the agent, and an ingenious and able argument was made to bring the case within the decision of the Supreme Court of the United States in *Fletcher's case.* Of that case, Keith, P., in *Mutual Fire Ins. Co. v. Ward, supra,* said: "It has been supposed in some quarters that the case of *Insurance Co.* v. *Fletcher,* 117 U. S. 519, impaired the authority of the case just cited (*Wilkinson's case*), but this impression proceeds upon a misapprehension of the latter case. It cites with approval the doctrine enunciated in *Wilkinson's case,* but points out that knowledge of the limitations upon the authority of the agent was brought home to the insured because those limitations were stated in the application signed by him."

The case at bar is easily distinguishable from *Fletcher's case.* There the assured had only to read the printed lines of the application signed by him to see and learn that "it stipulated that the rights of the company could in no respect be affected by his verbal statements or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office." It was his duty to read the application which he signed, and he was chargeable with notice of what it contained. But in this case, the printed application contains no limitation upon the powers of the agent. The insured, in its absence, had the right to presume that the powers of the agent were commensurate with the business entrusted to his care, and to look to and rely upon him as the full and complete representative of the company in all that was said or done in making the contract. And knowledge of facts communicated to him by the insured was binding on the company, unless special limitations upon his powers were known to the insured, or plainly appeared from the nature of his employment. The record fails to disclose that any limitations upon the powers of the agent were brought home to the insured, either in the application or otherwise.

The defence of forfeiture was waived upon another ground. Not only was R. P. Spencer, the special agent and adjuster, informed of the lien when investigating the fire just after its occurrence, but in the proof of loss the following distinct statement of the lien was made:

"*Note*: There was a mortgage given by W. P. Goode individually to the amount of three hundred and ninety dollars, which fact was made known to the agent when filling up our application, and his, the agent's, instructions, were not to make any note of it, as he said it was too small to make any difference."

The company, as hereinbefore stated, objected to the proof of loss because of certain alleged defects, and required new proof of loss to be made. It moreover required the original invoices or certified duplicates to be furnished, but made no allusion whatever to the existence of the lien, nor claimed that there was any ground of forfeiture of the policy.

It was only upon the theory that the policy was valid that the company had any right to demand a further proof of loss, or to require the invoices to be furnished. If it intended to claim that the policy was void because the deed of trust was not disclosed in the application, it ought to have so stated, and not required the insured to deliver new or additional proofs of loss, and to furnish invoices of the goods destroyed. It will be presumed from these circumstances that the company elected to waive the forfeiture. "A party cannot occupy inconsistent grounds or positions; and, where he has an election between inconsistent courses of action, he will be confined to that which he first adopts. Any decisive act of the party, done with knowledge of his rights and of the facts, determines his election and works an estoppel." Bigelow on Estoppel (3d ed.), 562; *Webster* v. *Phoenix Ins. Co.*, 36 Wis. 57; and 2 Wood on Insurance, sec. 526.

Where there has been a misrepresentation by an insured in his application for insurance or a breach of a condition of his policy, and the insurance company, with full knowledge thereof and without denying its liability on that ground, requires the insured to furnish, and he does furnish, at some trouble and expense, proofs of a loss under the policy, whether first or additional proofs, or requires him by virtue of the contract of insurance to do some act or incur some trouble or expense, it will be deemed to have waived any defence on account of such misrepresentation or breach, and cannot change its ground and claim that the policy was invalid. *Cannon* v. *Home Ins Co.*, 53 Wis. 585; *German Fire Ins. Co.* v. *Grunert*, 112 Ill. 68; *Penn. Fire Ins. Co.* v. *Kittle*, 39 Mich. 51; *Titus* v. *Glenn Falls Ins. Co.*, 81 N. Y. 410; *Roby* v. *Ins. Co.*, 120 N. Y. 510; *McNally* v. *Ins. Co.*, 137 N. Y. 369; *Man. & Mer. Ins. Co.* v. *Armstrong;* Ostrander on Fire Insurance, secs. 352, 353, and 2 May on Insurance, sec. 504, A.

In the case at bar the defendant company had full knowledge of the lien of the deed of trust, both through its adjuster, R. P. Spencer, and from the proof of loss, when it demanded further proof and required the invoices to be furnished. If it was not estopped to declare the policy void by reason of the knowledge of the soliciting agent of the lien when he took the application, it had the right, after acquiring actual and full knowledge of the lien, either to declare the policy to be void in consequence of the lien not being disclosed in the application, or to treat it as valid and require the insured to furnish new proof of loss, and the original or properly certified duplicate invoices of the goods that were destroyed. It chose the latter course, and put the insured to the trouble and expense of procuring the duplicate invoices. By this decisive act, done with full knowledge of the lien, and of its rights, if not previously estopped to insist on a forfeiture of the policy, it thereby waived the right to do so.

The policy insured the plaintiffs to the amount of $1,660, $1,625 thereof being on the stock of goods, and $35 on store

furniture, fixtures, and safe.   The verdict and judgment were for $1,660, the whole amount of the policy.   It was further contended that there was no proof in the record of the burning of any store furniture, fixtures, or safe, and that therefore the judgment should not in any event exceed $1,625. It was proved that the fire occurred in the night time, about half-past two o'clock, and that the store-house, together with the entire stock of goods, was destroyed.   It nowhere appears in the record that there was the least contention on the trial in the court below that the above mentioned property was not destroyed, or that anything was saved.   This point does not appear to have been pressed or relied on in the court below.   The facts and circumstances shown in evidence justify the jury in rendering a verdict for the whole amount of the policy.

The judgment of the Circuit Court must be affirmed.

*Affirmed.*