# Richmond.

## Virginia Fire & Marine Insurance Company v. Richmond Mica Co.

### February 10, 1904.

#### Absent, Cardwell, J.

1. Insurance—*Disclosure of Title to General Agent—Forfeiture—Estoppel.*—Where the general agent of an insurance company to write and deliver policies applies to a policy-holder to renew his policy which he has been carrying for several years, and is informed by the policy-holder that he has contracted to sell the property, and has put the purchaser in possession and received a part of the purchase money, stating how much is still due, and giving full particulars as to the condition of his title and ownership, and the agent, without any written application, thereupon writes and delivers a policy on the buildings, which he declares is sufficient to meet the situation disclosed, the company is estopped to assert a forfeiture of the policy by reason of provisions contained therein rendering it void if the interest of the assured be other than the unconditional and sole ownership, unless otherwise provided by agreement endorsed on the policy, and providing that no officer or agent of the company can waive any condition of the policy except by agreement in writing endorsed on or annexed to the policy. The conduct of the agent estops the company from asserting the forfeiture.

2. Fire Insurance—*Forfeiture—Waiver.*—Conditions in a fire insurance policy which are inserted for the benefit of the insurer, the breach of which may operate a forfeiture, may be waived by the insurer or his lawful agent.

3. Insurance Policy—*Conditions—Notice of Conditions—Policy as Notice—Waiver.*—An agent may waive conditions in an insurance policy notwithstanding inhibitions contained in the policy, unless the assured has actual notice of the limitations placed upon the agent's powers, either by having his attention called to the inhi-

bitions contained in the policy or otherwise. The mere fact that the policy contains the restrictive provision is not of itself sufficient to affect the assured with notice.

Error to a judgment of the Circuit Court of the city of Richmond, rendered in a proceeding by motion for a judgment, after notice in writing, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Leake & Carter,* for the plaintiff in error.

*Munford, Hunton, Williams & Anderson* and *Lewis C. Williams,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This was a proceeding by motion in the Circuit Court of the city of Richmond by the defendant in error, the Richmond Mica Company, against the plaintiff in error, the Virginia Fire & Marine Insurance Company, upon a fire insurance policy, to recover the sum of $1,500, loss occasioned the plaintiff from the destruction by fire of certain of the property covered by the policy.

The policy contains, among others, the following provisions:

(1) "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

(2) "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions, as may be endorsed hereon, or added hereto, and no officer, agent or other representative of

this company, shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions or conditions, no officer, agent or representative shall have such power, or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

Plaintiff in error denies liability for the loss on the ground that at the date of the policy the interest of the assured in the property was other than the unconditional and sole ownership, and that the building destroyed was not located on ground owned by the assured in fee simple, and that there had been no waiver of the forfeiture which accrued from the breach of the condition of the policy in the manner and upon the terms prescribed in the second provision, and the entire policy was therefore void and of no effect.

There was a demurrer to the evidence, which the trial court overruled, and rendered judgment for the plaintiff for the damages provisionally assessed by the jury, and the case is here on writ of error to that judgment.

It is conceded that, if the insurance company is liable at all, the amount of the recovery is correct; but, as remarked, the company denies liability *in toto,* for the reason stated.

It appeared in evidence that R. A. Lancaster, Jr., was the general agent of the insurance company for the city of Richmond; that during a series of years he had received the premiums and written insurance upon the property in question for the defendant in error in the company of his principal; that these policies were renewed from year to year, it being the practice of the agent before the expiration of a former policy to write insurance upon the property for the ensuing year, to deliver the policy to L. M. Williams, the secretary and treasurer

of the assured, and collect the premiums from him.    There was no written application for any of this insurance, and no information with respect to the property was demanded of the assured. Lancaster solicited the risk, wrote the insurance, received the premiums, and, in fine, was alone known to the assured throughout the transaction.

In accordance with custom, in the latter part of the year 1902 Lancaster approached Williams for the purpose of renewing the insurance for the year 1903, when he was informed by Williams that the Richmond Mica Company had contracted, in writing, to sell the property to one Mersereau, and had placed him in possession of it; that Mersereau had paid part of the purchase price, but owed a balance on the property of $3,402.43, which, when paid, or secured to be paid, would entitle him to a conveyance.    Having thus voluntarily made a full and fair disclosure of the state of the title of his principal, Williams requested Lancaster to write the insurance so as to meet the exigencies of the case.    Whereupon Lancaster assured him that it was not necessary to alter the policy as it had been prepared by him; that, when the title to the property was transferred to Mersereau, it would be time enough to make the change.    Acting upon that information and assurance, the premium was paid, and the policy accepted as filled up by Lancaster.

The *status quo* of all parties was maintained until May 30, 1903, when the property was destroyed by fire.    In its proof of loss, the assured having again called attention to its contract with Mersereau, the insurance company denied liability, and tendered the amount of the premium to Williams, who promptly declined to receive it.

On a similar state of facts, this court has so often decided that the conduct of the agent estops the insurance company from asserting the forfeiture relied on that it may be stated as established law in this jurisdiction.

In the case of *The Georgia Home Insurance Co.* v. *Kinnier,*

28 Gratt. 88, it was held that when a policy of insurance contained a condition that the policy should be vitiated if the premises became vacant by the removal of the owner or occupant for a period of more than 20 days without immediate notice to the company, and written consent, it was competent for the insurer or its lawful agent to waive this condition, and if, at the time the agent of the company received the premium of insurance and delivered the policy, he had knowledge of the vacation of the property, and did not then avoid the policy, but treated it as valid and subsisting, such conduct of the agent was a waiver of the condition, and a breach of it could not be relied on by the company to defeat a recovery upon the policy.  In the case of *McLean* v. *Insurance Co.,* 29 Gratt. 372, the above case is cited as authority for the proposition that conditions in a policy which are for the benefit of the insurer, the breach of which may operate a forfeiture, may be waived by the insurer or his lawful agent.  The rules there laid down with respect to the doctrine of waiver and estopped in such cases are followed and approved in *Insurance Co.* v. *Weill,* 28 Gratt. 389, 26 Am. Rep. 364; *Insurance Co.* v. *West,* 76 Va. 578, 44 Am. Rep. 177; *Insurance Co.* v. *Teiger,* 90 Va. 277, 18 S. E. 195; *Easley* v. *Insurance Co.,* 91 Va. 169, 21 S. E. 235; *Insurance Co.* v. *Pankey,* 91 Va. 259, 21 N. E. 487; *Insurance Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 846; *Insurance Co.* v. *Ward,* 95 Va. 231, 28 S. E. 209; *Farmers' Ass'n* v. *Williams,* 95 Va. 248, 28 S. E. 214; *Insurance Co.* v. *Goode,* 95 Va. 751, 30 S. E. 366; *Insurance Co.* v. *Nalls,* 101 Va. 613, 44 S. E. 896.

In many of those cases the policies were "standard policies," identical in form with the one under consideration.

In *Lynchburg Fire Insurance Co.* v. *West,* 76 Va. 578, 44 Am. Rep. 177, the court recognizes the general rule that parol testimony is inadmissible to vary or contradict written instruments, but holds that exceptions exist where the assured is misled by declarations of the insurer or his agent; where the insurer

insists on forfeitures of his own creation; where the insurer or his agent, in preparing an application or policy, fails to follow correct descriptions given by the assured; or where one uses his superior knowledge or influence to mislead the other as to the true import of the contract. Parol testimony is admissible in such instances, it is said, not to contradict the writing, but by way of equitable estoppel to prevent its use. It was also held in that case that the agent's knowledge of the real condition of the risk is imputable to the principal, and estops him from setting up any warranty inconsistent therewith.

Thus in *Virginia Fire & Marine Insurance Co.* v. *Goode,* 95 Va. 751, 30 S. E. 366, the court held that what passed between an agent and the assured while filling out an insurance policy is admissible when offered, not to contradict the policy, but to show that a representation therein ought not to operate as an estoppel upon the assured.

In *Mutual Fire Insurance Co.* v. *Ward,* 95 Va. 231, 28 S. E. 209, the court says at page 237, "That knowledge of a general agent, who has power to receive and accept proposals for risks, subject to the approval and ratification of his principal, to issue and deliver policies, and renew and cancel the same, will bind the company, was decided by this court in the case of *Georgia Home Insurance Co.* v. *Kinnier,* 28 Gratt. 96. . . . That facts communicated to the agent exercising powers thus enumerated, though uncommunicated to his principal, were held in the case of *Lynchburg Fire Insurance Co.* v. *West, supra,* to bind the company, there being no evidence to show that special limitations upon the power of the agent were known to the assured, or were plainly to be inferred by him from the nature of the agent's employment."

In *Farmers' etc. Association* v. *Williams,* 95 Va. 248, 28 S. E. 214, the following statement of the rule is quoted with approval from the opinion of Judge Cooley in the case of *Aetna Insurance Co.* v. *Olmstead,* 21 Mich. 253, 4 Am. Rep. 483:

"Where an agent, who, at the time and place, is the sole repre-
sentative of the principal, assumes to know what information
the principal requires, and, after being furnished with all the
facts, drafts a paper which he declares satisfactory, induces the
other party to sign it, receives and retains the premium moneys,
and then delivers a contract which the other party is led to be-
lieve, and has a right to believe, gives him the indemnity for
which he paid his money, we do not think the insurer can be
heard in repudiation of the indemnity on the ground of his
agent's unskillfulness, carelessness, or fraud.   If this can be
done, it is easy to see that the community is at the mercy of these
insurance agents, who will have little difficulty, in a large pro-
portion of the cases, in giving a worthless policy for the money
they receive."

The following language from the leading case of *Lynchburg
Fire Insurance Co.* v. *West, supra,* which was also quoted with
approval by this court in the case last named, is so apposite to
the case in judgment that it may with propriety be repeated:

"If the defendants were misled, it was by their own agent, and
not by the plaintiff.   The latter honestly gave the agent all the
information that was required of him.   He relied upon the
agent to see that the business was correctly done, according to the
requirements of the company.   Called upon to make answers to
certain interrogations, he had the right to presume that the agent
was competent to understand their meaning and effect, as well
as the meaning and effect of the provisions of the policy bearing
upon the disclosures made.   The defendants ought not now to
be heard to say that the agent of their own selection had exceeded
his powers, and that he had not communicated to them the facts
made known to him by the plaintiff.   This is manifestly so,
unless it could be shown that special limitations upon the powers
of the agent were known to the plaintiff, or plainly appeared
from the nature of his employment.

"No such limitations upon the powers of the agent are brought
home to the assured, either in the application or otherwise."

As has been seen, the assured gave full and explicit information with respect to its contract with Mersereau to Lancaster, the general agent of the insurance company, and invoked his superior knowledge, in the light of all the facts, to write a policy which would afford the indemnity sought, and to secure which the premium was paid.    Under these circumstances, without the slightest suspicion of bad faith on the part of the assured, the policy in question was prepared and delivered by Lancaster, with the assurance that it met the necessities of the case; and upon that assurance, the assured acted, and parted with the premium. Between the delivery of the policy and the fire, no change had taken place in the status of the property, and not a dollar more of the purchase price had been paid by Mersereau; and it is conceded that the assured had an insurable interest in the property far greater in value than the amount of the policy.    In the face of this undisputed testimony, to permit the insurance company, after loss, to escape liability upon the pretext that one of the general provisions of a printed policy, intended to cover every conceivable case, had been violated, would be in contravention of the decisions of this court from the case of *West Rockingham Insurance Co.* v. *Sheets,* 26 Gratt. 854, decided in November, 1875, to the latest expression of the court on the subject, found in the case of *Union Assurance Society of London* v. *Nalls,* 101 Va. 613, 44 S. E. 896, decided in June, 1903.

In the case of *The Wytheville Insurance & Banking Co.* v. *Teiger,* 90 Va. 277, 18 S. E. 195, the policy contained a provision "that in any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company," and the court held:    "When an insurance company clothes a person with apparent authority to deliver policies and receive premiums, as was done in this case, it is estopped, after a policy is delivered as a valid contract to an innocent holder, to set up the defence that the agent acted without written authority from the company.    Such a defence, if sustained,

would operate as a gross fraud, and can receive no countenance in a court of justice.    If in such case a waiver were not implied, the delivery of the policy would be not only an unmeaning, but a deceptive and fraudulent ceremony."    Citing *Farnum* v. *Phoenix Insurance Co.,* 83 Cal. 246, 23 Pac. 869, 17 Am. St. Rep. 233; *Georgia Home Ins. Co.* v. *Kinnier,* 28 Gratt. 88; *Manhattan Fire Insurance Co.* v. *Weill,* 28 Gratt. 389-395, 26 Am. Rep. 364; *Life Insurance Co.* v. *Miller,* 12 Wall. 285, 24 L. Ed. 410, 2 May on Insurance (3d Ed.), section 360, and other authorities.

It was insisted on behalf of the insurance company that the decision in *Sulphur Mines Co.* v. *Phoenix Insurance Co.,* 94 Va. 355, 27 S. E. 24, is opposed to the doctrine contended for on behalf of the defendant in error.    An examination of that case, however, shows that the question raised here was not involved. There the policy contained a provision that it should be void if the property was or should become incumbered, unless consent thereto should be indorsed on the policy by an authorized agent of the insurance company.    The court held that such an incumbrance, unknown to the company, avoids the policy, although it was not customary to make that inqury when policies were issued to large corporations.    It was not pretended in that case that the agent who affected the insurance knew of the incumbrance, or made any representation to the assured in regard to it.    It was therefore a breach by the assured of an express condition of the policy, unaffected by extraneous circumstances, and the court properly held that the policy was avoided.

It was also argued that the established doctrine of this court, namely, that an insurance company will not be heard to say that an agent of their own selection has exceeded his powers, and has not communicated to them facts made known to him by the assured, is subject to the qualification, *unless it can be shown that special limitations upon the powers of the agent are known to the assured, or plainly appear from the nature of the agent's em-*

*ployment.*    The contention is that a provision in a policy such as is contained in the policy in this case, *ipso facto,* carries notice of the restrictions on the powers of the agent home to the assured.

If that contention were true, it would practically abrogate the doctrine of this court in all cases, for the rule is predicated upon the fact that the dealings of the agent have been such that a policy which, according to its letter, was violated in its inception, and void *ab initio,* must be upheld on the ground that the agent has so dealt with the assured as to estop his principal from setting up and taking advantage of what would otherwise have operated a forfeiture.    The contention presents a striking illustration of arguing in a circle.    The insurance company, it is said, is estopped from relying upon the forfeiture prescribed by the policy, by reason of the conduct of its agent, which constitutes a fraud upon the rights of the assured; but the assured cannot avail himself of the estoppel, because to do so would contravene the provisions of the policy.

The true interpretation of the qualification of the rule is that the assured must have actual notice of the limitations placed upon the agent's powers, either by having his attention called to the stipulation of the policy containing it, or otherwise, and not on the constructive notice afforded by the circumstance that the policy contains the limitation.

In May on Insurance (Parsons' Ed.), section 137, at page 244, Mr. Parsons, referring to decisions where it is held that, in case of restrictions in the policy upon an agent's power, he cannot bind the company by acts in excess of such limitation, says:

"It seems very doubtful if the doctrine of these cases is entirely correct.    The assured has a right to suppose that a general agent has all the powers incident to his business unless he has knowledge to the contrary, and usage may overcome the provisions of the policy.    .    .    .

"Prudent men are accustomed to rely upon the acts and statements of the agents, and they should be protected in so doing. . . . As to waivers taking place after issue, it is very proper to require the assured to look at his policy and conform to it, and the limitations of the agent's authority should be effective unless, by a course of business or otherwise, the company has waived the limitation on the agent's power of waiver."

While, it must be confessed, there is great divergence of opinion on the subject, the rule as stated by Mr. Parsons is believed to be more in consonance with justice and reason, and has been uniformly upheld by the decisions of this court for the past 30 years.

Mr. Joyce in his admirable work on Insurance (volume 1, section 439), after an exhaustive discussion of the subject and review of the authorities, reaches the conclusion that *an agent may waive conditions, notwithstanding the inhibition in the policy.*

A strict adherence to the opposing theory would not only operate disastrously to the assured, but to the business of the insurer as well, for in the practical conduct of such business, it would be impossible to submit every departure from the company's rules to the principal office or to the board of directors.

Much reliance has been placed by counsel for the plaintiff in error upon the opinion of Mr. Justice Shiras in the case of *Northern Assurance Co.* v. *Grand View Building Association,* 183 U. S. 308, 23 Sup. Ct. 183, 46 L. Ed. 214, reversing the judgment of the Circuit Court of Appeals of the Eighth Circuit. While the pronouncements of that great court must always command the highest respect, its judgment in the particular case is deprived of much value as a precedent by the circumstance that it is not in harmony with many former decisions of that court, and that the Chief Justice, Mr. Justice Harlan, and Mr. Justice Peckham did not concur in the opinion of the majority. Since that decision was rendered, Mr. Justice Shiras has retired

from the bench, and been succeeded by Mr. Justice Day, who presided in the Circuit Court of Appeals in the case of *Queen Insurance Co.* v. *Union Bank & Trust Co.,* 111 Fed. 699, 49 C. C. A. 555, where a different conclusion was reached.   So there are now on that bench at least four justices who entertain views opposed to those of the majority, as expressed in the case referred to.   In this state of the law, this court can hardly be expected to abandon its own well-considered precedents to follow the questionable ruling of another tribunal.

It follows from these views that the judgment complained of is without error, and must be affirmed.

*Affirmed.*